**Virginia Ragon
ACHACOSO–SANCHEZ, Petitioner,**

v.

**IMMIGRATION AND NATURALIZA-
TION SERVICE, Respondent.**

No. 85–1528.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 6, 1985.

Decided Dec. 13, 1985.

Rehearing Denied Feb. 25, 1986.

Mary L. Sfasciotti, Kilberg, Sfasciotti & Wood, Chicago, Ill., for petitioner.

Mary Reed, Alison R. Drucker, Office of Immigration Litigation, Civ. Div., Dept. of Justice, Washington, D.C., for respondent.

Before FLAUM and EASTERBROOK, Circuit Judges, and WILL, Senior District Judge.[*]

EASTERBROOK, Circuit Judge.

Virginia Achacoso-Sanchez, a citizen of the Philippines, entered the United States in February 1979 as a visitor for pleasure. Her visa authorized a month's stay. She did not depart at the end of the month. In September 1979 her two children (then ages 6 and 8) joined her in the United States. On January 14, 1980, she married an alien admitted to permanent residence in the United States. Her husband became a citizen in November 1984. This enabled the children to apply for adjustment of status to that of lawful permanent residents; they did, and their petitions were granted.

## I

Meanwhile Achacoso-Sanchez was resisting the government's efforts to enforce the time limit of her visa. The Immigration and Naturalization Service charged her with overstaying her welcome, and it set a deportation hearing for January 15, 1980. She attended the hearing, announced her marriage the previous day, and admitted the facts necessary to demonstrate that she was deportable. The immigration judge found her deportable. She requested the privilege of voluntary departure, and the immigration judge accommodated her, al-

lowing her until April 15, 1980, to leave. She did not appeal this decision to the Board of Immigration Appeals. She also did not depart.

In March 1980 she asked the immigration judge to reopen her case, contending that she feared persecution should she return to the Philippines. See 8 U.S.C. § 1253(h); *INS v. Stevic,* 467 U.S. 407, 104 S.Ct. 2489, 81 L.Ed.2d 321 (1984). Achacoso-Sanchez's brother was elected to a political office in the Philippines in January 1980, and someone (he believed a political enemy) tried to kill him. Achacoso-Sanchez said that she feared that the Philippine government would not protect her adequately if she returned. The immigration judge disagreed, concluding that no evidence demonstrated that the Philippine government was unwilling or unable to protect her. This decision was rendered in August 1981. Achacoso-Sanchez appealed, and the Board affirmed on February 24, 1982.

This left Achacoso-Sanchez under a final order of deportation, although she was entitled to seek judicial review within six months. 8 U.S.C. § 1105a(a)(1). She did not seek judicial review, and again she did not depart. The INS apparently concluded that despite the final order of deportation, Achacoso-Sanchez was not going to leave unless carted away physically. In January 1983 the INS decided to do just that; it issued a warrant of deportation. Achacoso-Sanchez responded by filing in this court a petition for judicial review of the February 1982 decision. This petition was some five months out of time; nonetheless it invoked the automatic stay of deportation under 8 U.S.C. § 1105a(a)(3). Foiled again, the INS asked us to dismiss the petition or vacate the stay. In May 1983 this court dismissed the petition for want of jurisdiction.

Twelve days later Achacoso-Sanchez was back before the Board. She filed a motion to reconsider the decision of February 1982, urging the Board to reinstate the

[*] The Honorable Hubert L. Will, Senior District Judge of the Northern District of Illinois, is sitting by designation.

privilege of voluntary departure she had enjoyed in 1980. She also pointed out that a decision the immigration judge had mentioned in 1981 had been reversed by a court of appeals later that year. *McMullen v. INS*, 658 F.2d 1312 (9th Cir.1981). In October 1983 the Board denied the motion to reopen. It pointed out that *it* had not relied on the administrative decision in *McMullen* and that the reversal had been on factual rather than legal grounds. The Board also elaborated on its earlier conclusion that Achacoso-Sanchez did not have a reasonable fear of persecution in the Philippines, observing that the government was attempting to prosecute the people who had attacked her brother and that no member of her brother's family had been threatened since 1980. Finally, the Board refused to reinstate the privilege of voluntary departure, stating that Achacoso-Sanchez had not shown a good reason why she did not take advantage of the privilege when she had it in 1980.

For a third time Achacoso-Sanchez was under a final order to leave the country. For a third time she neither departed nor sought judicial review of the order. In December 1984 she filed with the Board still another motion to reopen. This time she requested the reopening so that she could apply for adjustment of status to that of an alien admitted for permanent residence. Her husband had been naturalized the previous month, making her eligible for adjustment of status as the spouse of a citizen. Ordinarily permission to become a permanent resident means a visa, and visas are usually available only at embassies abroad. After leaving to obtain a visa, the alien confronts the obstacle of 8 U.S.C. § 1182(a)(17), which provides that deported aliens may not reenter the United States for five years unless the Attorney General permits an earlier return.

The Board declined to decide whether Achacoso-Sanchez had made out a prima facie case for reopening to permit an adjustment of status in the United States. Because reopening and adjustment are discretionary, the Board explained, it was entitled to exercise its discretion against Acha-

coso-Sanchez whether or not she had satisfied the statutory requirements. It concluded that although Achacoso-Sanchez had not "necessarily" entered the United States in 1979 with intent to remain, her "conduct after her entry into the United States weighs against her application." The Board gave several reasons: (1) she "did not depart voluntarily pursuant to the immigration judge's final order of deportation;" (2) she neither departed in 1982 nor appealed from the Board's decision but instead "she waited until an order of deportation issued and then filed a patently frivolous appeal;" (3) when she asked the Board to reopen in 1983 "she made no new arguments in support" of her position; (4) although she is married to a citizen, she "married her husband only one day before the hearing at which the outstanding order of deportation was entered. When an alien marries in the shadow of an order of deportation, the equities gained are reduced." The Board also observed that Achacoso-Sanchez had not met the procedural requirements for reopening, because her motions papers in 1984 neglected to inform the Board of the petition for judicial review in 1983. See 8 C.F.R. § 3.8(a).

Although the Board recognized that adjustment of status in the United States is designed in part to keep families together, it stated that because Achacoso-Sanchez "is immediately eligible for a visa, she will only be separated from her family as long as the processing of her visa takes." It took a hard-nosed position: "The normal procedure is for an alien in the United States to obtain a visa at a consulate abroad. To relieve hardships the Attorney General is allowed in some cases to adjust the status of an alien already here. [Achacoso-Sanchez] was required by law to leave the United States by April 15, 1980. We see no reason why she should not be required to leave at this time."

## II

■] Achacoso-Sanchez concedes, as she must, that adjustment of status is a discre-

tionary remedy and that the Board may deny relief even to aliens who satisfy the statutory requirements of eligibility. *United States ex rel. Hintopoulos v. Shaughnessy,* 353 U.S. 72, 77, 77 S.Ct. 618, 621, 1 L.Ed.2d 652 (1957); *Yahkpua v. INS,* 770 F.2d 1317 (5th Cir.1985); *Patel v. INS,* 738 F.2d 239 (7th Cir.1984). Nonetheless, her principal argument is that the Board should have afforded her a hearing and made factual findings on all of the elements affecting her eligibility for adjustment of status. The Board, she maintains, may not exercise its discretion until it has first determined her eligibility.

This is incorrect. *INS v. Bagamasbad,* 429 U.S. 24, 97 S.Ct. at 200, 50 L.Ed.2d 190 (1976), considered and rejected this argument. Bagamasbad asked for an adjustment of status to that of lawful permanent resident. The Court held that because his application would have been denied whether or not he met the statutory requirements for adjustment, the Board was entitled to consider the discretionary factors and stop. "As a general rule courts and agencies are not required to make findings on issues the decision of which is unnecessary to the results they reach." 429 U.S. at 25, 97 S.Ct. at 200.

Achacoso-Sanchez apparently seeks to distinguish *Bagamasbad* on the ground that it was a "mere" application for adjustment of status, while hers is an application for reopening of a deportation proceeding to permit adjustment. This is a distinction without a difference. The Board may reject applications for reopening on discretionary grounds, *INS v. Rios-Pineda,* —— U.S. ——, 105 S.Ct. 2098, 2102, 85 L.Ed.2d 452 (1985), so an application for reopening to permit adjustment calls for discretion piled on discretion. The Board was entitled to deny Achacoso-Sanchez's motion to reopen without issuing an advisory opinion on her eligibility for adjustment of status.

The Board did not take mercy on Achacoso-Sanchez, but it has the discretion to be cold-blooded. *INS v. Jong Ha Wang,* 450 U.S. 139, 101 S.Ct. 1027, 67 L.Ed.2d 123 (1981). To say that an agency has discre-

tion to act implies that it may be stern as well as generous. The Board may be concerned about consistency in the treatment of aliens. Many aliens have applied for visas in the Philippines and are waiting their turns in a very long line. Achacoso-Sanchez jumped the queue; she overstayed a tourist visa and has resisted all invitations to rejoin the queue abroad. The Court held in *Jong Ha Wang* that the humanitarian nature of the statutory exceptions to deportation does not require the Board to be generous in granting relief. Liberal use of discretionary relief may reward those who violate the immigration laws at the expense of those who observe them. The Court quoted with approval the remarks of Judge Goodwin, who observed that relief from deportation allows people who violate the immigration laws to become permanent residents "without the inconvenience of immigration quotas. This strategy is not fair to those waiting for a quota." 450 U.S. at 145, 101 S.Ct. at 1031. The Board expressed a similar view here in observing that most aliens must receive their visas abroad, and that Achacoso-Sanchez had not made a sufficient case for an exception.

The Board also emphasized that Achacoso-Sanchez had spurned an opportunity to depart voluntarily in 1980 and had filed a frivolous appeal (one more than five months out of time) in order to stave off imminent departure in 1983. The Supreme Court held in *Rios-Pineda* that neglect of an opportunity to depart and frivolous appeals support an adverse exercise of discretion. Rios-Pineda himself entered the country without inspection, which is surely worse than overstaying a visa, but the Court did not suggest that the facts of that case marked the outer limits of the Board's discretion. Moreover, an appeal five months out of time, for the sole purpose of obtaining an automatic stay of deportation, is probably worse than making bad legal arguments in a timely appeal, which was Rios-Pineda's sin.

### III

Still, the Court said in *Rios-Pineda* that decisions to deny discretionary relief may

be reviewed to ensure that the Board does not abuse its discretion. 105 S.Ct. at 2103. "Abuse of discretion" is a phrase with many meanings. See Friendly, *Indiscretion About Discretion,* 31 Emory L.J. 747 (1982). This circuit has never defined the meaning of this standard as it applies to immigration cases, and it is time to do so.

"Abuse" of discretion cannot be understood without reference to the purpose and scope of the discretion being exercised. The discretion of immigration officials is exceptionally broad. The Supreme Court recently suggested that it is absolute. See *INS v. Phinpathya,* 464 U.S. 183, 188 n. 6, 104 S.Ct. 584, 588 n. 6, 78 L.Ed.2d 401 (1984) (the disposition of a motion to reopen "is entirely within the BIA's discretion") (dictum). The Board's discretion is broad in part because it administers the immigration laws, and "over no conceivable subject is the legislative power of Congress more complete" than with respect to immigration. *Oceanic Steam Navigation Co. v. Stranahan,* 214 U.S. 320, 339, 29 S.Ct. 671, 676, 53 L.Ed. 1013 (1909). Congress has the power to make distinctions on account of race, national origin, and other considerations that it would be forbidden to use in drawing distinctions among residents of the country. *Fiallo v. Bell,* 430 U.S. 787, 792–96, 97 S.Ct. 1473, 1477–80, 52 L.Ed.2d 50 (1977); *The Chinese Exclusion Case,* 130 U.S. 581, 9 S.Ct. 623, 32 L.Ed. 1068 (1889). When Congress does not lay down rules, its power devolves on the executive branch, which then may consider factors of its own choosing. *Kleindienst v. Mandel,* 408 U.S. 753, 766–70, 92 S.Ct. 2576, 2583–85, 33 L.Ed.2d 683 (1972); *Hintopoulos, supra,* 353 U.S. at 78, 77 S.Ct. at 621; *Yassini v. Crosland,* 618 F.2d 1356 (9th Cir.1980); *Narenji v. Civiletti,* 617 F.2d 745 (D.C.Cir.1980).

Congress established the criteria for deportability, and it is undisputed that Achacoso-Sanchez is a deportable alien. That was established in 1980. Congress has not given deportable aliens a right to the reopening of deportation proceedings. Quite the contrary, reopening is an invention of the Attorney General, who promulgated regulations establishing a procedure by which deportable aliens could present new developments to the Board. *Rios-Pineda, supra,* 105 S.Ct. at 2100. The regulation is phrased in the negative. The dispositive passage begins: "Motions to reopen in deportation proceedings shall not be granted unless it appears to the Board that evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing ...", 8 C.F.R. § 3.2. The regulation continues with a long list of reasons why reopening may be denied without once suggesting when it might be granted.

██ Neither statute nor regulation sets up an entitlement to relief turning on objective criteria, and without such a legitimate claim of entitlement the alien does not have a "liberty" or "property" interest in reopening within the meaning of the Fifth Amendment. See *Olim v. Wakinekona,* 461 U.S. 238, 248–51, 103 S.Ct. 1741, 1747–48, 75 L.Ed.2d 813 (1983); *Hewitt v. Helms,* 459 U.S. 460, 471, 103 S.Ct. 864, 871, 74 L.Ed.2d 675 (1983); *Connecticut Board of Pardons v. Dumschat,* 452 U.S. 458, 466–67, 101 S.Ct. 2460, 2465, 69 L.Ed.2d 158 (1981); *Leis v. Flynt,* 439 U.S. 438, 99 S.Ct. 698, 58 L.Ed.2d 717 (1979); *Board of Regents v. Roth,* 408 U.S. 564, 570–77, 92 S.Ct. 2701, 2705–9, 33 L.Ed.2d 548 (1973). Cf. *Cleveland Board of Education v. Loudermill,* —— U.S. ——, 105 S.Ct. 1487, 1491–93, 84 L.Ed.2d 494 (1985). The fact that reopening does not entail either a definite set of rules or constitutional "liberty or property" suggests a narrow scope of judicial review.

The absence of substantive rules means more than just the absence of "liberty or property." It means the absence of standards for judges to use. The judicial process is a system of rational application of rules to facts. See *Federated Department Stores, Inc. v. Moitie,* 452 U.S. 394, 401, 101 S.Ct. 2424, 2429, 69 L.Ed.2d 103 (1981); *TVA v. Hill,* 437 U.S. 153, 193–95, 98 S.Ct. 2279, 2301–2, 57 L.Ed.2d 117 (1978); *Polk Bros., Inc. v. Forest City Enterprises,*

*Inc.*, 776 F.2d 185, 193 (7th Cir.1985). When there are no rules or standards there is neither legal right nor legal wrong. There may be moral or prudential claims, but such claims are the province of other actors, be they administrators or legislators.

The power to reopen a case and grant an adjustment of status is a power to dispense mercy. No one is entitled to mercy, and there are no standards by which judges may patrol its exercise. The amenability of a case to a merciful result depends on a *relative* claim. The petitioner for clemency argues that he is a good beneficiary relative to the many other people with competing claims. In order to tell whether Achacoso-Sanchez deserves merciful treatment, one must know not only the facts of her case but also the circumstances of the tens of thousands of other aliens seeking relief. If the Board is doing its job well, it is comparing the applicants against each other as well as evaluating them under moral and prudential standards. That comparison entails the assessment of thousands of aliens who are invisible to judges when a single alien seeks judicial review. The nature of the comparison makes it unsuited for judicial resolution.

In the language of administrative law, the grant of discretionary relief under the immigration laws is a question on which there is "no law to apply," and when there is no law to apply judicial review is exceedingly constricted. E.g., *Heckler v. Chaney*, —— U.S. ——, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985); *Morris v. Gressette*, 432 U.S. 491, 97 S.Ct. 2411, 53 L.Ed.2d 506 (1977); *Moog Industries, Inc. v. FTC*, 355 U.S. 411, 78 S.Ct. 377, 2 L.Ed.2d 370 (1958). When there is no governing legal rule, it is fatuous to speak of "error" in the disposition of a given case. Judges, specialists in the applications of standards of decision to facts, and in the rooting out of error, have little to contribute. See *Metlyn Realty Corp. v. Esmark, Inc.*, 763 F.2d 826, 831–32 (7th Cir.1985); *In re Sinadinos*, 760 F.2d 167, 170 (7th Cir.1985).

This does not mean that judges should simply consign aliens to their meagre political remedies. It means only that because there are no rules of law here, courts cannot review "the merits" of the decisions. There is no standard by which a court may conclude that a failure to be lenient was "error." Administrators with plenary discretion to do as they will on the merits must still abide by constitutional constraints and use the procedures required by statute or rule. The Board "abuses its discretion" when it acts for a forbidden reason or for a reason that a court *can* determine is erroneous. If, for example, the Board had denied Achacoso-Sanchez's application on the ground that she was engaged in employment and therefore ineligible under 8 C.F.R. § 245.1(b)(4), a court could review the record to determine whether the Board's belief had substantial support. Similarly, if the Board violated the procedural rights required by law, a court could act intelligently. Cf. *Bothyo v. Moyer*, 772 F.2d 353 (7th Cir.1985).

■ The First and Sixth Circuits use the following standard of review: "The denial [of a motion to reopen] will be upheld unless it 'was made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as invidious discrimination against a particular race or group.'" *Williams v. INS*, 773 F.2d 8, 9 (1st Cir.1985), quoting from *Balani v. INS*, 669 F.2d 1157, 1161 (6th Cir.1982). We adopt this as the law of this circuit. There will of course be difficult questions about what a "rational explanation" may be, given the sweeping discretion of the Board, and when a given discrimination is impermissible or invidious. See *Jean v. Nelson*, 727 F.2d 957 (11th Cir.1984) (en banc), aff'd on other grounds, —— U.S. ——, 105 S.Ct. 2992, 86 L.Ed.2d 664 (1985). There are no talismans here. But we think this comes as close as any reasonably short formula can to being a fair representation of the scope of judicial review.

## IV

■ This case is an easy one under the abuse of discretion standard as we have explained it. The Board articulated rational explanations for its decision. The Board is entitled to take a dim view of asking for voluntary departure and then not departing; it is entitled to look askance on aliens who ignore valid orders of deportation, wait for the INS to arrive at their doorsteps, and then file specious judicial actions that have no purpose other than to obtain stays of deportation. True, Achacoso-Sanchez entered lawfully and has a family here. But the Board's reason need not be compelling, or even convincing, to be sufficient. The Board's decision is reasoned, and that is enough.

■ Achacoso-Sanchez does not contend that the Board used a constitutionally forbidden factor in her case. She does say that the Board departed from prior practice. This line of argument, as we understand her brief, is that the Board has in the past been more lenient with aliens with families than it was with her. This is not the sort of "inexplicable departure" we have in mind. It is really just another way to argue the merits of her case, and judicial review for unexplained about-faces is not a back door avenue of substantive review. An "unexplained departure" is a sudden change in the *rules* the Board uses to decide cases, not a claim of error in a particular case.

Only one thing troubles us about the Board's performance here. We have said that the Board abuses its discretion when it acts on a supposition that is not true. Action on the basis of a falsehood is action "without a rational explanation." The Board's opinion contains a questionable assertion: "As [Achacoso-Sanchez] is immediately eligible for a visa, she will only be separated from her family as long as the processing of her visa takes." A technical reading might render this sentence as: "Achacoso-Sanchez need remain outside the United States only until she is allowed to return." We doubt, however, that the Board meant this tautology. We under-

stand its words as an assertion that the government routinely grants waivers under 8 U.S.C. § 1182(a)(17), which requires deported aliens to wait five years before reentering the United States unless the Attorney General allows them to return sooner. We cannot tell from the opinion, but this belief may have been important to the Board's exercise of its discretion. If this belief was important, then it must have a factual basis.

The Board's opinion does not indicate the source of its belief, and counsel for the Board did not do so either. Data on the average wait between application and the grant of waiver (plus the issuance of a visa) for aliens applying from the Philippines apparently are not collected. Counsel for the Board relayed to us the position of officials in the Philippines that waivers are "routinely granted for spouses of United States citizens unless the alien's conduct has been particularly egregious" and that processing takes three to four months. The time may be reduced if the alien seeks the waiver before leaving the United States, which Achacoso-Sanchez has not done. Counsel for Achacoso-Sanchez stated at oral argument that her own experience suggested that it would take Achacoso-Sanchez about a year to obtain a waiver of the five-year rule. Counsel thought a year a long time. It is, but one year is a lot shorter than five.

We remain troubled by the lack of data. Impressions may be inaccurate. Yet administrative agencies often act on the basis of factual suppositions that are difficult to verify. The National Labor Relations Board, for example, regularly requires or forbids certain conduct on the basis of hunches about what does or does not stifle the exercise of free choice by members of unions. Empirical research has not been kind to the Board's hunches, see Getman, Goldberg & Herman, *The National Labor Relations Board Voting Study: A Preliminary Report*, 1 J. Legal Studies 233 (1972), and the Board has changed its mind repeatedly, but this does not invalidate the Board's decisions. See *Mosey Mfg. Co. v.*

*NLRB*, 701 F.2d 610 (7th Cir.1983) (en banc) (tracing some of the turns). The FCC issues or denies licenses on the basis of unverified beliefs about the effects of concentration in the ownership of the media. See *FCC v. National Citizens Committee for Broadcasting*, 436 U.S. 775, 796–97, 98 S.Ct. 2096, 2112–13, 56 L.Ed.2d 697 (1978). In these and other cases too numerous to count, e.g., *United Air Lines, Inc. v. CAB*, 766 F.2d 1107 (7th Cir.1985), agencies act on the basis of what they suppose to be true. Unverified beliefs about the world also influence judicial opinions (including this one). It could hardly be otherwise, for the law is a set of rules designed to influence a very complex social system, which must be understood, if only poorly, before it may be influenced.

The Board's belief that aliens in Achacoso-Sanchez's position are likely to return to the United States before the five years provided by law are up is a belief about legislative rather than adjudicative fact. The Board is entitled to make such an assumption, and to have the courts respect it, unless there is compelling reason to believe that it is wrong. Achacoso-Sanchez has not furnished such a reason. Neither she nor the Board has the necessary data. The parties' impressions, estimating the time between four months and a year, support the Board's belief that Achacoso-Sanchez will not be separated from her family for the full five-year period. The absence of better data is common in adjudication. Unless we simply assume the opposite of what the Board believed—and we have no basis for doing so—we cannot upset its decision.

The petition for review is DENIED.