**Manilal V. PATEL, Petitioner,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

**Sharda M. PATEL, Petitioner,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

Nos. 85–1527, 85–2544.

United States Court of Appeals, Seventh Circuit.

Argued April 10, 1986.

Decided Feb. 3, 1987.

Mary L. Sfasciotti, Kenosha, Wis., for petitioner.

Joseph F. Ciolino, Office Immigration Lit. Civil Div., Dept. of Justice, Washington, D.C., for respondent.

Before WOOD and RIPPLE, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

ESCHBACH, Senior Circuit Judge.

The issue presented by these petitions is whether the Board of Immigration Appeals abused its discretion by denying petitioner Manilal Patel's application for adjustment of status under 8 U.S.C. § 1255[1] and by denying petitioner Sharda Patel's motion to reopen her deportation proceedings to allow her to file an application for adjustment of status derivatively based upon that of Manilal Patel, her husband. Because we find no abuse, we will deny the petitions for review.

## I.

Mr. Patel is a native and citizen of India. He came to the United States in July of 1972 as a nonimmigrant student and was admitted pursuant to 8 U.S.C. §§ 1201(a) and 1101(a)(15)(F).[2] Pursuant to the terms of his student visa, he attended Industrial Engineering College in Chicago, Illinois. Shortly after his arrival, he began working to support himself and to pay his tuition and fees. Although required to do so by the terms of his visa, he did not inform the Immigration and Naturalization Service ("INS") that he was working.[3] Subsequently, he attended school on a part-time basis, working during the day and attending classes at night. During this time, he applied for and obtained three extensions of his student visa, the last of which ex-

---

**1.** 8 U.S.C. § 1255(a) provides, in pertinent part:

The status of an alien who was inspected and admitted or paroled into the United States may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence if (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed.

Throughout this opinion, we cite to the current versions of the statutes and regulations involved, having examined any prior versions which might control and concluding that they do not differ in any respect that is material to our disposition of this case. As noted in the text, the one point which Mr. Patel makes regarding the application of an arguably incorrect version of a regulation to his case is not properly before us.

We also note that we are cognizant of the fact that a major immigration reform act was recently passed by Congress and signed into law by the President. Immigration Reform and Control Act of 1986, Pub.L. No. 99–603, 100 Stat. 3359, 99th Cong., 2d Sess. (1986), *reprinted in* 55 U.S.L.W. 275 (December 23, 1986). Although the act contains a grant of amnesty to certain aliens continuously present in the United States since January 1, 1982, the amnesty provision's applicability is to be determined in the first instance upon application to the Attorney General or his designee. *Id.,* § 201. Thus, no question involving the interpretation of the amnesty provision is before us.

**2.** 8 U.S.C. § 1201(a) provides, in pertinent part:

Under the conditions hereinafter prescribed and subject to the limitations prescribed in this chapter or regulations issued thereunder, a consular officer may issue.... (2) to a nonimmigrant who has made proper application therefor, a nonimmigrant visa, which shall specify the classification under section 1101(a)(15) of this title of the nonimmigrant, the period during which the nonimmigrant visa shall be valid, and such additional information as may be required.

8 U.S.C. § 1101(a)(15)(F) sets out, as one of several nonimmigrant classes:

(i) an alien having a residence in a foreign country which he has no intention of abandoning who is a bona fide student qualified to pursue a full course of study and who seeks to enter the United States temporarily and solely for the purpose of pursuing such a course of study at an established college, university, seminary, conservatory, academic high school, elementary school, or other academic institution or in a language training program in the United States, particularly designated by him and approved by the Attorney General after consultation with the Secretary of Education, which institution or place of study shall have agreed to report to the Attorney General the termination of attendance of each nonimmigrant student, and if any such institution of learning or place of study fails to make reports promptly the approval shall be withdrawn, and (ii) the alien spouse and minor children of any such alien if accompanying him or following to join him.

An alien who is admitted under the above provisions is commonly referred to as having "F–1" status.

**3.** 8 C.F.R. § 214.2(f)(9) requires "F–1" students to apply for INS authorization before they begin off-campus employment. Additionally, that provision forbids such students to work during their first year of study, and limits employment thereafter to twenty hours per week during the school year. All of these conditions appear to have been violated by Mr. Patel.

pired in July of 1976. He ceased attending school in January of 1975.[4]

On March 31, 1976, Mr. Patel purchased a coin-operated laundry for $10,000. The funds to purchase the business were entirely derived from his unauthorized employment in this country. On the basis of this investment, he sought adjustment of his status to that of an alien admitted for permanent residence, claiming exemption from the labor certification requirements, normally applicable to non-preference aliens, due to his status as an investor.[5]

The District Director of the Immigration and Naturalization Service denied Mr. Patel's application for adjustment of status as a matter of administrative discretion, citing as an adverse factor the fact that the funds for his investment had come from unauthorized employment.

Mr. Patel was granted the privilege of voluntary departure, but he did not depart. Deportation proceedings were commenced against him, charging that he was deportable because he had violated the terms of his visa and overstayed it. Before the immigration judge, he renewed his application for adjustment of status, having admitted to being deportable as charged. After a five-year hiatus in the proceedings,[6] the immigration judge denied the application in the exercise of administrative discretion. However, he relied primarily upon an alleged bribery attempt by Mr. Patel.

Mr. Patel appealed to the Board of Immigration Appeals (the "Board"), which affirmed the denial of the application for adjustment of status, although on different grounds. First, the Board held that he was statutorily ineligible for admission into the United States (or in this case for adjustment) because he did not fall within the investor exemption to the labor certification requirement and he had no labor certification. Alternatively, the Board held that he was not entitled to adjustment of status as a matter of administrative discretion. In support of the discretionary denial, the Board cited the fact that Mr. Patel almost immediately commenced unauthorized employment, the fact that the money for his investment came solely from that employment, his early abandonment of his student status, and his lack of candor with immigration officials. The Board concluded that Mr. Patel "managed to enter and remain here only by deceit and an expanding series of lies. This sorry record is a very significant adverse factor bearing on the exercise of discretion." The Board expressly did not rely on the bribery incident.[7]

---

4. Although the record is less than clear on this point, it appears that the last of the extensions was granted in July of 1975, six months after the petitioner ceased attending school.

5. 8 U.S.C. § 1182(a)(14) makes ineligible for immigrant visas and excludes from admission into the United States:

Aliens seeking to enter the United States, for the purpose of performing skilled or unskilled labor, unless the Secretary of Labor has determined and certified to the Secretary of State and the Attorney General that (A) there are not sufficient workers who are able, willing, qualified (or equally qualified in the case of aliens who are members of the teaching profession or who have exceptional ability in the sciences or the arts), and available at the time of application for a visa and admission to the United States and at the place where the alien is to perform such skilled or unskilled labor, and (B) the employment of such aliens will not adversely affect the wages and working conditions of the workers in the United States similarly employed. The exclusion of aliens under this paragraph shall apply to preference immigrant aliens described in section 1153(a)(3) and (6) of this title, and to nonpreference immigrant aliens described in section 1153(a)(7) of this title.

8 C.F.R. § 212.8 exempts certain classes of aliens from the labor certification requirement, on the theory that they are not deemed to be seeking admission for the purpose of performing labor. Among these are alien investors, who presumably help, rather than harm, workers within the United States.

6. No reason for the delay is contained in the record. It appears that a decision on the application was finally produced as a result of a suit brought by the petitioner to compel a decision on the pending application and the subsequent settlement of that suit on the understanding that there would be an expeditious adjudication of the application.

7. As noted in the text, the issue regarding evidence of the attempted bribe is not properly before us. Therefore, we do not dwell at length on the facts regarding it.

Petitioner Sharda N. Patel is Mr. Patel's wife. When he initially came over to this country, she remained in India with their daughter, who was then two years old. In January of 1982, she entered the United States as a visitor for pleasure. She was authorized to stay until February 1982. However, she did not leave when her visa expired. She was found deportable in a deportation proceeding sometime in early 1983 and was granted the privilege of voluntary departure. She neither departed nor appealed that decision, but moved to reopen the proceedings requesting the opportunity to file an application for adjustment of status derivatively based on that of her husband. Her motion to reopen was denied by both the immigration judge and the Board because her husband's application for adjustment of status had been denied.

Following the Board's denial of relief, the Patels separately petitioned for review of the Board's decisions.

## II.

Initially, we must point out those matters which are not properly before us. First, we must decline petitioners' invitation to review the Board's determination on Mr. Patel's statutory eligibility. Secondly, we do not consider the admissibility *vel non* at the hearing before the immigration judge of the evidence of the alleged bribery attempt.

## A.

■ As noted above, the Board's holdings were phrased in the alternative. The Board held that (1) Mr. Patel was statutorily ineligible for adjustment, and (2) even if he were eligible, he did not merit such relief as a matter of discretion. If the Board must be sustained on the latter of those grounds, then there is no need for us to inquire into the propriety of the former. Indeed, we cannot do so, for where an alien is denied relief as a matter of discretion, the inquiry into statutory eligibility is pretermitted. *See INS v. Bagamasbad*, 429 U.S. 24, 25–26, 97 S.Ct. 200, 201, 50 L.Ed.2d

190 (1976); *see also INS v. Rios-Pineda*, 471 U.S. 444, 105 S.Ct. 2098, 2102, 85 L.Ed.2d 452 (1985). Petitioners urge that by saying review of the statutory question was "pretermitted" the Supreme Court did not mean that it was "foreclosed." However, in doing so, petitioners urge a semantic hairsplitting in which we are unwilling to indulge. The substance of the Supreme Court's decision in the case is clearly that such review *is* foreclosed when the Board has grounded its decision on discretion. The Court specifically noted:

As a general rule courts and agencies are not required to make findings on issues the decision of which is unnecessary to the results they reach.... Here, it is conceded that respondent's application would have been properly denied whether or not she satisfied the statutory eligibility requirements. In these circumstances, absent an express statutory requirement, we see no reason to depart from the general rule and require the immigration judge to arrive at purely advisory findings and conclusions as to statutory eligibility.

*Bagamasbad*, 429 U.S. at 25–26, 97 S.Ct. at 201.

While we realize that in this case, unlike the situation in *Bagamasbad*, the Board made findings on the issue of statutory eligibility, that does not mean that we are free to review them when the Board's alternative justification, the exercise of its discretion, is adequately supported. Just as we may not ask that an immigration judge arrive at purely advisory conclusions on statutory eligibility, neither can we do so ourselves.

Petitioners cite two additional reasons which, they say, counsel that we adopt a different position. First, according to petitioners, because nearly all relief under the immigration laws is discretionary, a holding that the exercise of discretion pretermits questions of eligibility will insulate most administrative action under those laws from review. We are unwilling to adopt the assumption implicit in petitioners' argument, that the Board will deliberately

use its discretion to shield errors of law from review in the United States Courts of Appeal. In any event, such a situation is not suggested by this record. Should such a circumstance manifest itself in the future, we have confidence in the ability of reviewing courts to deal with it.

Secondly, petitioners contend that they have been prejudiced by the determination of statutory ineligibility which, they say, will be binding on a United States Consul considering a new application seeking investor status for Mr. Patel. While it is true that this concern might justify our reaching the statutory issue in some cases, *see Bagamasbad,* 429 U.S. at 26–27, 97 S.Ct. at 201, under the peculiar circumstances of this case, it does not concern us. The finding of ineligibility for investor status was based upon a regulation which both parties agree is no longer in effect. In fact, the nub of petitioners' argument is that Mr. Patel complied with the current regulations and the Board erred by applying the regulations which were in effect at the time he applied for adjustment of status. Nowhere is it suggested that the prior regulations would apply to a new visa application, and we do not see how they could. Thus, petitioners' assertion that the decision on eligibility will prejudice any such new application is simply incorrect.

### B.

Also not before us is the question of the admissibility of evidence relating to the alleged bribery attempt. Although the immigration judge admitted the evidence, and expressly based his decision on it, the Board expressly disavowed any reliance on

it. We are not at liberty to reverse on the supposition that the Board in fact relied on evidence that it said it was disregarding. Were there evidence that this was the case, our analysis might be different, but as respondent suggests, there is a "presumption of honesty and integrity in those serving as adjudicators," *Withrow v. Larkin,* 421 U.S. 35, 47, 95 S.Ct. 1456, 1464, 43 L.Ed.2d 712 (1975), which we may not lightly cast aside. There is nothing in this record which persuades us to do so.[8]

Finally, petitioners suggest that, while the Board said that it was not relying on the pre-trial diversion agreement or the criminal complaint in the bribery matter, it made no such statement as to the "facts developed therefrom." *Petitioner's Brief in No. 85–1527* at 44. However, even a cursory review of the Board's order reveals otherwise. The Board stated, "we find it unnecessary to rely on those matters referenced by the immigration judge to which the respondent objects, principally the issue of respondent's alleged bribe offer to two Service officers." A clearer statement that the Board was not relying on either the formal documents or the underlying facts upon which they were based could hardly be imagined.

### III.

Thus narrowed, the issue which presents itself is whether the Board abused its discretion in denying Mr. Patel's application for adjustment of status.[9] We hold that it did not.

 The first step in our analysis is determining the standard of review which is applied when this court considers a challenge to a discretionary decision of the

---

**8.** An appellate court could not, of course, do as the Board has done, disregarding some evidence of record and reaching independent conclusions. However, the Board has the power to review the record *de novo* and reach its own findings of fact. *Cardoza-Fonesca v. INS,* 767 F.2d 1448, 1455 (9th Cir.1985), *cert. granted,* —— U.S. ——, 106 S.Ct. 1181, 89 L.Ed.2d 298 (1986).

**9.** We have not discussed the merits of Sharda Patel's petition in any depth because, as it is entirely derivative of her husband's, once his is denied hers falls as well. Her challenges involving the propriety of the Board's acting on her

motion before her husband's application for adjustment has been finally denied can surely be dismissed as moot because there now is such a final denial. The only other possible challenges would essentially involve challenges to the Board's disposition of her husband's application for adjustment of status, which, if presented at all by her petition are necessarily disposed of by our opinion in his case. We express no opinion on whether the granting of her husband's application would require a different result in her case.

Board.[10] As with any discretionary decision, the standard governing our review is a narrow one. *See Achacoso-Sanchez v. INS,* 779 F.2d 1260, 1264 (7th Cir.1985). In *Achacoso-Sanchez,* this court adopted a standard by which a discretionary decision of the Board is to be measured. Such a decision is to be upheld "unless it 'was made without rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as invidious discrimination against a particular race or group.'" *Id.* at 1265 (quoting *Williams v. INS,* 773 F.2d 8, 9 (1st Cir. 1985), which in turn quoted *Balani v. INS,* 669 F.2d 1157, 1161 (6th Cir.1982)). It is this standard which governs the instant case.

Petitioners have failed to meet the heavy burden which faces an alien seeking to overturn the denial of discretionary relief. The Board cited a number of adverse factors bearing on the exercise of its discretion, recognized favorable factors, and concluded that the latter did not outweigh the former. More is not required. We realize that this approach may seem overly deferential to some. However, the factual findings which underlie the exercise of discretion are also tested under the substantial evidence test. *Wing Ding Chan v. INS,* 631 F.2d 978, 980–81 (D.C.Cir.1980), *cert. denied,* 450 U.S. 921, 101 S.Ct. 1371, 67 L.Ed.2d 349 (1981).[11] In other words, if petitioners contended that the adverse factors on which the Board relied were not

present, we would undertake to ascertain whether the Board's findings to the contrary were supported by substantial evidence. Here, however, there is no serious dispute about the facts.[12]

■ Several of the adverse factors cited by the Board support its decision to deny discretionary relief. Perhaps the most important of the adverse factors relied upon by the Board was the fact that petitioner misrepresented his status to immigration officials upon entry and thereafter. The Board found that his initial entry was "disingenuous," and that he was able to enter and remain in this country only "by deceit and an expanding series of lies." As this court has held, "[a]bsence of good faith entry is considered a critical adverse factor in an application for adjustment of status.... This factor alone may be sufficient to deny adjustment to permanent resident status." *Patel v. INS,* 738 F.2d 239, 242 (7th Cir.1984).[13]

Petitioners claim that, on appeal, respondent has introduced "pre-conceived intent to remain" as a new reason for denying the application for adjustment. However, we read the Board's statement that Mr. Patel's initial entry was "disingenuous" as at least stating that he was not a bona fide F–1 student at the time of his entry.[14] Whether his actual intent was to remain in the country permanently, while arguably supported by the record, is not the determining factor. It is the misrepresentation of his

10. Of course, the statute, by its terms, commits the decision whether to grant an application for adjustment of status to the discretion of the Attorney General. However, it is clear that the Attorney General may delegate his discretionary authority to make such decisions. *Jarecha v. INS,* 417 F.2d 220, 223 (5th Cir.1969); *see also Jay v. Boyd,* 351 U.S. 345, 351 n. 8, 76 S.Ct. 919, 923 n. 8, 100 L.Ed. 1242 (1956) (8 U.S.C. § 1253). This authority has been delegated to the Board under 8 C.F.R. § 3.1(d)(1). *See Jarecha,* 417 F.2d at 223–24.

11. This circuit has not heretofore expressly adopted the two part standard of review in *Wing Ding Chan.* We do so now, in part because we find that it is implicit in the requirement that the Board not act arbitrarily or irrationally.

12. Mr. Patel does claim that there was not substantial evidence that he made misrepresenta-

tions on his applications for extension of his student status because the government did not produce those applications. This contention is without merit. Mr. Patel admitted on the witness stand that he was required to indicate who was furnishing his support on the applications, and that he lied in his response. While the better procedure would have been to introduce the applications as well, the failure to do so was not fatal to the government's case.

13. The alien in the cited case is, so far as we can determine, of no relation to the petitioners in this case.

14. While it could be stated more clearly, we believe that this statement also can be read as suggesting that petitioner did have a preconceived intent to remain permanently when he entered the country. Such a finding would

status which affords the basis for denying petitioner the favorable exercise of discretion. *See id.* (preconceived intent to remain was adverse factor because it indicated that alien misrepresented his intentions when applying for entry as non-immigrant). As the board noted, this misrepresentation was compounded when Mr. Patel continued to apply for extensions. The Board was entitled to take this lack of candor and disregard for the immigration laws of this country into account in denying him discretionary relief.

The Board also denied the adjustment application because of Mr. Patel's unauthorized employment. This it was entitled to do. In large measure the immigration laws are intended to protect the domestic labor force. Indeed, this is the purpose of the labor certification requirement in 8 U.S.C. § 1182(a)(14). *Wang v. INS,* 602 F.2d 211, 213 (9th Cir.1979). The Board is entitled to take a dim view of nonimmigrant aliens who work without permission in violation of their nonimmigrant status.

Furthermore, we do not believe that the Board was precluded from using petitioner's unauthorized employment as an adverse discretionary factor by the 1977 amendments to section 1255. In 1977, Congress amended the statute to preclude adjustment of status for any alien (except those in certain classes not relevant here) "who hereafter continues in or accepts unauthorized employment prior to filing an application for adjustment of status...." Petitioner contends that use of his unauthorized employment effectively expands the scope of the statutory bar, which would otherwise be inapplicable to him.[15] We disagree. The mere fact that a particular factor does not render an alien ineligible for discretionary relief does not mean that it cannot be used as a factor in making the discretionary decision. In analogous circumstances, it has been held that Congress' deletion of a requirement that an alien enter as a bona fide nonimmigrant in order to be eligible did not preclude use of that factor in the exercise of discretion. *Castillo v. INS,* 350 F.2d 1, 3–4 (9th Cir.1965).

As petitioners point out, the Board has "decline[d] to adopt a rule regarding the exercise of discretion which could in effect expand this statutory bar beyond the limits set by Congress and prevent adjustment of status to all aliens who engaged in unauthorized employment." *Matter of Khan,* 17 I & N Dec. 508, 509 (Bd.Imm.App.1980). Thus, the Board concluded, where "unauthorized employment is the only adverse matter of record, adjustment of status should ordinarily not be denied in the exercise of discretion." *Id.* However, in the present case the unauthorized employment clearly was not the *only* adverse matter of record. In addition to the misrepresentations already noted, another adverse factor was the petitioner's failure to finish his studies. *See Patel,* 738 F.2d at 243. In conjunction with these factors, the Board was entitled to take the unauthorized employment into account.[16]

The Board's other decisions which declined, under certain circumstances, to consider unauthorized employment as an adverse factor, specifically *Matter of Lam,* 16 I & N Dec. 432 (Bd.Imm.App.1978) and *Matter of Arai,* 13 I & N Dec. 494 (Bd.Imm.App.1970), were properly limited by

have been supported by the fact that he began working shortly after his entry. *Patel v. INS,* 738 F.2d 239, 242 (7th Cir.1984) (citing *Ameeriar v. INS,* 438 F.2d 1028, 1033 (3d Cir.) *(en banc),* cert. dismissed, 404 U.S. 801, 92 S.Ct. 21, 30 L.Ed.2d 34 (1971)). However, because the Board's order was less than clear on this point and because such a finding is not necessary either to the Board's exercise of its discretion or to our denial of the petition for review, we will assume that no such finding was made.

15. The statutory bar is clearly not applicable to this case, since Manilal's unauthorized employment ceased before the effective date of the act and his adjustment application was pending at that time. Management of the business which forms the basis for an investor application ordinarily is not considered to be unauthorized employment for purposes of the statutory bar. *See Bhakta v. INS,* 667 F.2d 771 (9th Cir.1981). There is no indication that the Board treated it as such here.

16. Although the Board did not do so, *Matter of Khan* could clearly have been otherwise distinguished from the instant case. Khan began working because, almost immediately after he came to the United States, his mother developed serious health problems and he was forced to use the money which had been saved for school to support her. The lack of funds occasioned

the Board to situations where the unauthorized employment is shown to be a benefit to the United States economy. The Board is allowed great flexibility in the principles it uses to guide its discretion, so long as it offers a rational explanation of them. This it has done.

Nor does petitioner otherwise come within the principle announced by those decisions. Petitioner's assertion that his unauthorized employment was of benefit to the United States is without any support from the record. It may be true that his *investment* was of benefit to the economy, but that is not the same thing. The assertion that the employment was "connected" to his investment is simply beside the point. The reasons the Board does not consider work which serves as qualifying experience for a labor certification as an adverse factor is that there has been a determination that there is a shortage of workers to perform such work. Thus, the work itself is of benefit to the United States economy. This is not necessarily the case where work which allows an alien to earn enough to become an investor is concerned.[17]

## IV.

Our review of discretionary decisions such as this one is narrowly circumscribed, and for good reason. As we noted in *Achacoso-Sanchez:*

> In order to tell whether [the alien] deserves merciful treatment, one must know not only the facts of her case but also the circumstances of the tens of thousands of other aliens seeking relief. If the Board is doing its job well, it is comparing the applicants against each other as well as evaluating them under moral and prudential standards. That comparison entails the assessment of thousands of aliens who are invisible to judges when a single alien seeks judicial review. The nature of the comparison makes it unsuited for judicial resolution.

779 F.2d at 1265.

The Board has given a reasoned explanation for the exercise of its discretion, and we find no abuse. Therefore, the petitions for review are DENIED.

---

by that calamity eventually forced him to leave school. There is nothing to suggest that petitioner's lack of funds arose from a similar unforeseen calamity. We have no doubt that the Board would have been within its discretion to distinguish the cases because it found the equities to be significantly different. Petitioner's suggestion that his case is identical to Khan's is simply incorrect.

**17.** We do not address petitioners' "estoppel" argument separately because we find that it is largely a restatement of their other arguments. Assuming, without deciding, that the government can ever be estopped from enforcing the immigration laws, we have little difficulty concluding that this case is not of the type that would call for an application of estoppel principles. Estoppel depends upon some affirmative misconduct, in the nature of a promise or misrepresentation, on the part of the party to be estopped and justifiable reliance on the part of the party asserting the estoppel. Neither appears to be present here. The only colorable claim of estoppel which is separate from petitioners' other arguments appears to be the delay in adjudicating Manilal's petition. There is no showing that this delay constituted or was the result of misconduct on the part of the government. Nor is there any showing that Mr. Patel relied upon the delay in some justifiable fashion. He does assert that, had there been no delay, the alleged bribery attempt would never have occurred. In light of what we have already said about the relevance of that attempt to this appeal, this assertion does not persuade us that estoppel is appropriate.