**HE XIN CHEN, Petitioner**

v.

**ATTORNEY GENERAL OF the UNITED STATES, Respondent.**

No. 08–1614.

United States Court of Appeals, Third Circuit.

Argued: Sept. 29, 2009.

Filed: Nov. 10, 2009.

Marco Pignone, III, Esq. [Argued], Getson & Schatz, Philadelphia, PA, for Petitioner, He Xin Chen.

Paul Fiorini, Esq. [Argued], Richard M. Evans, Esq., U.S. Department of Justice, Office of Immigration Litigation, Washington, DC, for Respondent, Attorney General of the United States.

Before: RENDELL and AMBRO, Circuit Judges, and McVERRY,* District Judge.

### OPINION OF THE COURT

RENDELL, Circuit Judge.

Petitioner He Xin Chen petitions for review of an order of removal issued by the Board of Immigration Appeals ("BIA"). We will deny the petition.

### Background

Petitioner, a Chinese citizen, applied for asylum in 2003 after entering the United States. He claimed that, pursuant to China's family planning policy, officials mandated that he be sterilized because his wife had already given birth to one son. He submitted as evidence his wife's medical records, the sterilization order issued by the government in 2002, and a receipt issued in 1994 to petitioner and his wife when they paid a fine for having a child

before marriage. On October 15, 2004, Immigration Judge Rosalind K. Malloy found petitioner's claims credible and determined that petitioner's "opposition to the family planning practices of China constitutes a political opinion" for which he would be persecuted upon returning to China. Pet.App. I, at 33. Judge Malloy granted asylum.

On March 21, 2005, Elaine Wooton, a forensic document examiner employed by U.S. Immigration and Customs Enforcement ("ICE"), sent a brief letter to an ICE attorney challenging the authenticity of the sterilization order and fine receipt submitted by petitioner. Wooton noted that the two documents bear nearly identical markings from a rubber stamp, and concluded that these impressions had been generated by the same stamp, at about the same time. If this were true, then it could not be the case, as petitioner claimed, that the fine receipt was issued in 1994 while the sterilization order was issued in 2002. (It is not clear what prompted Wooton to write this letter, or why it was not issued until five months after the asylum hearing.) On April 11, the Government moved to reopen the removal proceedings. On April 15, before petitioner could respond, Judge Malloy granted the motion and reopened the proceedings.[1]

On September 28, Gary Herbertson, also a forensic document examiner, sent a brief letter to petitioner's counsel regarding the authenticity of the documents. Herbertson concluded that there was insufficient evidence to determine whether one stamp (as Wooton believed) or two stamps (as petitioner claimed) had been used for the two documents.

---

* Honorable Terrence F. McVerry, Judge of the United States District Court for the Western District of Pennsylvania, sitting by designation.

1. We do not endorse this practice. However, petitioner did have an opportunity to address the basis for reopening at the later hearing, and he does not claim prejudice.

At a hearing on October 11, Judge Malloy heard testimony from Wooton and Herbertson. Wooton testified that she had examined the two stamp impressions side by side, and had determined that they shared "minute, microscopic marks." Pet. App. II, at 75. Wooton testified that she was "100% sure" that these similarities meant that the impressions had been created by the same stamp at the same time. Pet.App. II, at 89. However, Wooton was unable to identify the specific marks shared by the impressions because she had not kept any notes of her work (pursuant to an Immigration and Customs Enforcement policy) and did not have copies of the fine receipt or sterilization notice available to her during the hearing.

Herbertson testified that he had used a different methodology to compare the two stamp impressions. He had superimposed an image of one of the stamp impressions on an image of the other, and had found that there were several "extraneous marks" not shared by the two impressions. Pet.App. II, at 13. Herbertson thus disagreed with Wooton's conclusion that it could be definitively concluded that the impressions were generated by one stamp. However, since Herbertson could not determine with certainty that the impressions were generated by two different stamps, he was unable to opine that the documents were definitely authentic.

On January 8, 2007, Judge Malloy issued an amended decision finding that the sterilization notice had been fabricated. She cited several factors in support of her decision: the experts' written findings; her own insights into the likelihood that two stamp impressions, generated eight years apart, could be so similar; and a State Department report stating that documentation from China is sometimes fabricated. Since she determined that the sterilization notice had been fabricated, and since that notice was the critical evidence supporting petitioner's claim of persecution, Judge Malloy vacated the earlier order granting asylum and issued a new order denying petitioner's asylum application.

Petitioner appealed this determination to the BIA. On February 8, 2008, the BIA issued a decision affirming Judge Malloy's decision and ordering petitioner's removal. The BIA decision summarized the opinions of Herbertson and Wooton and the other evidence submitted by petitioner. The BIA found that Judge Malloy's decision was not clearly erroneous, since Herbertson had been unable to definitively conclude that the documents were authentic. Since the sterilization notice was central to petitioner's claim, the BIA also determined that it was not clearly erroneous to find that "his entire asylum claim lacked credibility." Pet.App. I, at 7.

This petition followed.

Petitioner makes two arguments. His core argument is that he was unable to adequately cross-examine Wooton at the October 11 hearing because she could not consult either her notes or the challenged documents, and that his due process rights were violated when Judge Malloy (and then the BIA) considered Wooton's report despite this problem. As a result, petitioner contends, Wooton failed to "disclose the underlying facts or data [supporting her analysis] on cross-examination," *see* Fed.R.Evid. 705, as envisioned by the Federal Rules of Evidence and *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). Petitioner also criticizes Wooton's methodology in examining the documents and argues that Herbertson's was superior. Petitioner also makes a second, cursory argument that Judge Malloy and the BIA failed to consider the record as a whole to find that, even accepting Wooton's theory, petitioner was credible and eligible for asylum.

## Discussion

We have jurisdiction under 8 U.S.C. § 1252 to review a final order of removal issued by the BIA. The BIA had jurisdiction over petitioner's appeal under 8 C.F.R. § 1003.1. When the BIA conducted an independent analysis of the record, as it did here, we limit our review to the BIA's final order, rather than the underlying determination by an immigration judge. *Ezeagwuna v. Ashcroft*, 325 F.3d 396, 405 (3d Cir.2003); *Abdulai v. Ashcroft*, 239 F.3d 542, 549 (3d Cir.2001).

We apply a deferential standard of review when reviewing decisions of the BIA. *Chavarria v. Gonzalez*, 446 F.3d 508, 515 (3d Cir.2006). We review the BIA's factual findings—including adverse credibility determinations and determinations of whether an asylum applicant meets the criteria for asylum—under the substantial evidence standard, and do not reverse them "unless any reasonable adjudicator would be compelled" to reach a different conclusion than that of the BIA. 8 U.S.C. § 1252(b)(4)(B); *Kaita v. Attorney General*, 522 F.3d 288, 296 (3d Cir.2008).

An alien facing removal is entitled to due process in asylum proceedings,[2] and we review *de novo* claims that a petitioner's due process rights were violated. *Ezeagwuna*, 325 F.3d at 405. For due process to be satisfied, the alien must have an opportunity to review the record relied on by the decisionmaker; must be allowed to make arguments on his own behalf; and must receive an individualized determination of his interests. *Abdulai*, 239 F.3d at 550. Although the Federal Rules of Evidence do not apply in asylum proceedings, due process requires that evidence be admitted in asylum proceedings only when it is probative and its use is fundamentally fair. *Ezeagwuna*, 325 F.3d at 405. This, in turn, requires that the evidence be reliable and trustworthy. *Id.* When the BIA relies on evidence that does not meet these standards, it violates the alien's due process rights. *Id.* at 408.

We find petitioner's arguments unpersuasive. Despite the fact that Wooton did not have either her own notes or the challenged documents available to her at the hearing, petitioner's counsel was able to cross-examine Wooton effectively regarding her methodology and findings. Wooton thus offered sufficient testimony at the hearing regarding her professional background and her methodology for examining the documents to enable Judge Malloy to evaluate her report. Wooton's inability to identify the specific marks that were shared by the two stamp impressions may have compromised the clarity and effectiveness of her testimony. However, we do not find this deficiency so serious that it rises to a due process violation. We therefore find that Wooton's testimony was sufficiently probative, reliable, and trustworthy for Judge Malloy to have relied on it in evaluating the Government's claim that petitioner's evidence was fabricated. Even if petitioner is correct that Rule 705 and *Daubert* would require the exclusion of Wooton's testimony in civil litigation, that does not mean that his right to due process was violated in an immigration proceeding where, as petitioner concedes, those rules do not directly apply.

Moreover, we cannot conclude that a "reasonable adjudicator would be compelled" to reach different factual findings

---

2. The Government's contention to the contrary is without merit, *see Ezeagwuna*, 325 F.3d at 405; *Abdulai*, 239 F.3d at 550, and we do not agree that it is supported by *Achacoso–Sanchez v. INS*, 779 F.2d 1260 (7th Cir.1985), or *Dandan v. Ashcroft*, 339 F.3d 567 (7th Cir.2003). *See also Sankoh v. Mukasey*, 539 F.3d 456, 466 (7th Cir.2008) ("Due process demands an individualized assessment of each asylum applicant.").

than those of the BIA. *See* 8 U.S.C. § 1252(b)(4)(B). Although we might have given Wooton's testimony less weight than Judge Malloy and the BIA did, that does not mean that the BIA was "compelled" to conclude that Herbertson's testimony should be credited over Wooton's.

Nor can we conclude that Judge Malloy or the BIA erred in not explaining how the false document affected petitioner's credibility in light of the record as a whole. Once Wooton's conclusion was accepted, it was reasonable for the BIA to find that petitioner's claims as a whole were not credible and were not sufficiently substantiated. We are not persuaded that the BIA gave short shrift to petitioner's other evidence when it reached this conclusion.

### Conclusion

We will therefore DENY the Petition for Review.