<div style="border: 1px solid black; padding: 10px;">

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

</div>

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1468-19T2

DANIEL W. PAURO,

    Plaintiff-Respondent,

v.

RACHEL L. PAURO,

    Defendant-Appellant.

_____

> Argued on September 22, 2020 – Decided October 27, 2020
>
> Before Judges Gilson and Moynihan.
>
> On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Atlantic County, Docket No. FM-01-0121-18.
>
> Nicholas C. Needle argued the cause for appellant (Conrad O'Brien PC, attorneys; Nicholas C. Needle and Robert N. Feltoon on the brief).
>
> Respondent has not filed a brief.

PER CURIAM

Defendant Rachel L. Pauro appeals that portion of the trial judge's order granting without prejudice plaintiff Daniel W. Pauro's cross-motion to restrain Rachel[1] from "taking the [parties' two minor] children to [Daniel's] adoptive parents" and the subsequent denial of her motion for reconsideration of that order. Although our review of Family Part decisions is narrow as those judges are accorded "broad discretion because of their specialized knowledge and experience in matters involving parental relationships and the best interests of children," and we generally defer to those decisions "unless they are so wide of the mark that our intervention is required to avert an injustice," N.J. Div. of Youth & Fam. Servs. v. F.M., 211 N.J. 420, 427 (2012); see also N.J. Div. of Child Prot. & Permanency v. A.B., 231 N.J. 354, 365 (2017), "[w]e owe no special deference to . . . [a] judge's legal determinations," and, as here, "are compelled to reverse when the judge does not apply the governing legal standards," Slawinski v. Nicholas, 448 N.J. Super. 25, 32 (App. Div. 2016).

When Rachel moved to change the parenting time schedule to which the

---

[1]  We use the parties' given names to avoid confusion because they have the same surnames. We mean no disrespect or familiarity by our practice.

A-1468-19T2

parties agreed the year prior in a mediated agreement,[2] Daniel sought to restrain Rachel from bringing the children to their paternal grandparents "for any type of parenting time." In an oral decision rendered after a non-testimonial motion hearing, the trial judge observed that Daniel had "a problem with his adoptive parents. For whatever reasons he ha[d] issues with them, and that is something that obviously is very significant to him. But the children also have a relationship with that family, those parents and the adoptive, and the extended families at both sides."

After expressing hope that the children would enjoy relationships with their relatives, the judge conceded she did not "know the full extent of how involved the children are with other family, cousins[,] and aunts and uncles and grandparents," and that it was "hard for [her] to discern based upon what[] [was then] right in front of [her] . . . whether the children should continue a relationship with [Daniel's] adoptive parents." The judge agreed with Rachel's counsel's argument

> that we don't know based upon what's been discussed
> thus far what the problem is with the [children] seeing

---

[2] The parenting plan agreement, incorporated in the final judgment of divorce, set forth a proposed schedule, and the parties agreed "to maintain open communication" in order to adjust the plan as needed. It did not provide any limitation pertaining to the exercise of parenting time.

the grandparents separate and apart from what [Daniel] has an issue with them.

So I don't have enough information right now to say, "Well, you know, it's against their interests or not in their best interests to not see their grandparents," because I don't know what [Daniel's] issues are. He may have a reason to believe that those, his parents may not be in the best situation to, to respond to the children. I don't know that. So what I would say, at least at this instance is, if the grandparents want to have parenting rights, grandparents' visitation then they need to file the application. And if that is brought then, at that time, all those issues will come out.

At this point, I'm not going to enforce that right, their right to have visitation by having [Rachel] take the children there.

In denying Rachel's motion for reconsideration, the trial judge: concluded Rachel "failed to put forth sufficient grounds under Court Rule, or by case law[,]" that warranted a change to the challenged provision; and clarified that Rachel could "not place the children in contact with the paternal grandparents during her parenting time, even if she accompanies the children[,]" leaving any contact with the grandparents to a later determination of their motion for visitation pursuant to N.J.S.A. 9:2-7.1.

The procedures under that statute, however, were inapplicable to these circumstances where, as recognized by the trial judge, Rachel wanted to visit Daniel's parents during her parenting time. The grandparents did not seek their

4

own time with the children, which would have required them to file a motion under the statute and assume the burden of proving by a preponderance of the evidence that granting them visitation was in the children's best interests. N.J.S.A. 9:2-7.1(a).

Inasmuch as the issue at hand involves one parent's parenting time, we adhere to the tenet that the "primary concern in determining questions of visitation and custody is the best interests of the child[ren]." Wilke v. Culp, 196 N.J. Super. 487, 497 (App. Div. 1984). In making the determination, the focus must be on the "safety, happiness, physical, mental and moral welfare" of the children. Fantony v. Fantony, 21 N.J. 525, 536 (1956); see also Hand v. Hand, 391 N.J. Super. 102, 105 (App. Div. 2007).

In essence, Daniel's cross-motion sought to limit Rachel's parenting-time activities. "A party seeking to modify custody must demonstrate changed circumstances that affect the welfare of the children." Hand, 391 N.J. Super. at 105. "[A] motion for a change in custody . . . will be governed initially by a changed circumstances inquiry and ultimately by a simple best interests analysis." Baures v. Lewis, 167 N.J. 91, 116 (2001), overruled on other grounds, Bisbing v. Bisbing, 230 N.J. 309 (2017); see also R.K. v. F.K., 437 N.J. Super. 58, 62 (App. Div. 2014).

"First, a party must show 'a change of circumstances warranting modification' of the custodial arrangements." Costa v. Costa, 440 N.J. Super. 1, 4 (App. Div. 2015) (quoting R.K., 437 N.J. Super. at 63). In evaluating whether the requisite changed circumstances exist, the judge must consider the circumstances that existed at the time the original custody order was entered. Sheehan v. Sheehan, 51 N.J. Super. 276, 287-88 (App. Div. 1958). The judge can then "ascertain what motivated the original judgment and determine whether there has been any change in circumstances." Id. at 288. Only if the party makes that showing is that party then "entitled to a plenary hearing as to disputed material facts regarding the child's best interests, and whether those best interests are served by modification of the existing custody order." R.K., 437 N.J. Super. at 62-63.

The trial judge strayed from these procedures. She did not analyze what was obviously a change of circumstances: the restriction of Rachel's activities with the children during her parenting time. And the judge did not consider the children's best interests, despite recognizing the importance of the children's relationships with their extended family, and that the only reason for the restriction on seeing their grandparents was Daniel's cryptic "problem with his adoptive parents."

6

While a parent's personal views should be considered in deciding custody and parenting time conditions if "they relate to the paramount consideration of the safety, happiness, physical, mental and moral welfare of the child[ren]," we have long held they do not govern those conditions. DeVita v. DeVita, 145 N.J. Super. 120, 128 (App. Div. 1976). The trial judge made no finding that Daniel established the children would be harmed by seeing their grandparents, or that it was not otherwise in the children's best interests to have contact with them.

The trial judge's misapplication of the law was an abuse of discretion in that it "departed from established policies, [and] rested on an impermissible basis." Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002) (quoting Achacoso-Sanchez v. Immigr. & Naturalization Serv., 779 F.2d 1260, 1265 (7th Cir. 1985)). We are constrained to reverse that portion of the order restraining Rachel "from taking the children to [Daniel's] adoptive parents."[3]

Reversed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[3] Although not required in light of our decision, we also reverse the denial of Rachel's motion for reconsideration because it too was based on a misapplication of the law. See Pitney Bowes Bank, Inc. v. ABC Caging Fulfillment, 440 N.J. Super. 378, 382 (App. Div. 2015) (holding our review of a trial court's decision on a motion for reconsideration is for a clear abuse of discretion, present when the trial court's decision rests "upon a palpably incorrect or irrational basis"); D'Atria v. D'Atria, 242 N.J. Super. 392, 401 (Ch. Div. 1990).

A-1468-19T2