**Craig MUNI, Plaintiff,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE and Doris Meissner, Commissioner, Defendants.**

**No. 94 CV 2557.**

United States District Court,
N.D. Illinois,
Eastern Division.

May 19, 1995.

Richard James Puchalski, Sklodowski, Franklin, Puchalski & Reimer, Chicago, IL, for plaintiff.

U.S. Attorney's Office, Chicago, IL, for defendants.

### MEMORANDUM AND ORDER

MORAN, Chief Judge.

Plaintiff Craig Muni brings this action against the Immigration and Naturalization Service (INS or the Service) and its commissioner, Doris Meissner, challenging the Service's denial of his visa petition.[1] In June or July 1993 Muni, a player in the National Hockey League (NHL), petitioned the INS for an immigrant visa, claiming that he was a worker with extraordinary ability and therefore deserved priority treatment under § 203(b)(1)(A) of the Immigration and Naturalization Act, 8 U.S.C. § 1153(b)(1)(A).[2] The director of the INS' Northern Service Center[3] denied his petition, and the Administrative Appeals Unit (AAU) affirmed. Muni now appeals that decision to this court.

Both parties have moved for summary judgment. For the reasons set forth below, Muni's motion is granted and the INS' motion is denied.

### FACTS[4]

Muni was born in Canada on July 19, 1962 and is a Canadian citizen. In 1980, he was drafted by the Toronto Maple Leafs, an NHL team, and he began his career as a defenseman for that team in the 1981–82 season. In October 1986 he was traded to the Edmonton Oilers, where he stayed for seven years. In the 1986–87, 1987–88, and 1989–90 seasons, the Oilers won the Stanley Cup, the NHL's championship trophy. At that time Muni was a regular player and had one of the best plus-minus ratios[5] on the team. In the 1988–89 season he had the fourth best plus-minus ratio in the entire NHL. A poll taken by *Goal* magazine (an NHL publication) rated him the "most underrated defenseman" in the League in 1990, and in 1991 *Hockey Digest* named him one of the top ten hitting defensemen.

In March 1993 Muni was traded to the Chicago Blackhawks. He now plays for the Buffalo Sabres, whom he joined in October 1993. Muni presently earns $550,000 per year; in the 1992–93 season, when his petition was filed, his annual salary was $400,000. The average salary for an NHL defenseman in 1992–93 was $387,914.

In addition to salary information, Muni submitted to the INS numerous magazine and newspaper articles purporting to establish his stature in the hockey world. He also submitted affidavits from eight veteran NHL players stating that he is highly regarded by

---

**1.** Because Meissner and the INS have the same interests in this lawsuit, we refer to them collectively as the INS or the Service.

**2.** Section 203(b)(1)(A) does not grant workers of extraordinary ability permanent resident status, but the receipt of an employment-based immigrant visa under the section permits the alien to apply for permanent resident status.

**3.** Petitions like Muni's are filed in the INS Regional Service Centers. 8 C.F.R. § 204.5(b); 56 Fed.Reg. 60897, 60897 (Nov. 29, 1991). The Northern Service Center is located in Lincoln, Nebraska.

**4.** Unless otherwise noted, the facts recited here are undisputed and are part of the administrative record.

**5.** The plus-minus ratio is not really a ratio; it is the number of goals scored by a player's team while he is on the ice minus the number of goals scored against the team when the player is on the ice. The plus-minus ratio is a standard measure of a defensive player's ability: the higher the number, the better the player.

other players and is one of the best defensemen in hockey. Finally, Muni alleged that other NHL players of comparable ability—Steve Smith, Rob Brown, and Brent Sutter—have received immigrant visas under § 203(b)(1)(A).

The director of the INS's Northern Service Center denied Muni's petition. She found that there was no evidence that Muni's salary is high compared with what other NHL players receive; that he failed to explain the reputation, significance, or selection criteria of the awards from *Hockey Digest* and *Goal;* that the newspaper articles established only his improvement as a player after joining the Oilers, his contributions to the Oilers' Stanley Cup victories, and the fact that he is remembered for playing while sutures on his face were leaking; and that the affidavits showed that Muni was an excellent, hard-hitting defenseman. The director concluded that

> [w]hile [Muni] appears to enjoy a noteworthy career as a professional hockey player, there is no evidence that [he] has been selected to all-star teams or received official recognitions as an extraordinary hockey player. The evidence submitted does not establish that [he] is one of the few who have risen to the very top of his field of endeavor.

(Admin.Rec. at 86.)

The AAU affirmed. In addition to reiterating the arguments made by the regional director in her initial decision, the AAU found that Muni had not established his role in the Oilers' Stanley Cup victories; that his extended membership in the NHL was not sufficient in itself to establish extraordinary ability; and that he had not presented enough evidence comparing the experience, abilities, and salaries of players who have already received immigrant visas with his own qualifications. The AAU rejected Muni's argument that anyone who plays in the NHL for an extended period of time has extraordinary ability. Instead, because Muni was not "within the small percentage at the very top of the players in the NHL," the AAU concluded that he was not an alien of extraordinary ability and affirmed the director's decision to deny his petition.

## DISCUSSION

Section 203(b)(1) provides in part as follows:

(1) Priority workers

Visas shall first be made available in a number not to exceed 28.6 percent of such worldwide level, plus any visas not required for the classes specified in paragraphs (4) and (5), to qualified immigrants who are aliens described in any of the following subparagraphs (A) through (C):

(A) Aliens with extraordinary ability

An alien is described in this subparagraph if—

(i) the alien has extraordinary ability in the sciences, arts, education, business, or athletics which has been demonstrated by sustained national or international acclaim and whose achievements have been recognized in the field through extensive documentation,

(ii) the alien seeks to enter the United States to continue work in the area of extraordinary ability, and

(iii) the alien's entry into the United States will substantially benefit prospectively the United States.

The INS does not contend that Muni has failed to meet the latter two requirements. Therefore, the only issue before this court is whether the INS properly concluded that Muni is not an alien of extraordinary ability under subsection (b)(1)(A)(i).

### A. *Definition of Extraordinary Ability*

As an initial matter, we reject Muni's contention that we should treat the definition of extraordinary ability as a question of statutory construction subject to *de novo* review. It is well established that "[a] court reviewing an agency's interpretation of a statute must first look to the statute in question: if the statute addresses the precise question at issue and its meaning is clear, the text controls. But if 'the court determines Congress has not directly addressed the precise question at issue,' then 'the question for the court is whether the agency's answer is based on a permissible construction of the statute.'" *Inman v. Shalala,* 30 F.3d 840, 843 (7th Cir.1994) (quoting *Chevron, U.S.A., Inc. v.*

*Natural Resources Defense Council,* 467 U.S. 837, 843, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984)) (citations omitted). Section 203(b)(1)(A) does not address the precise question at issue here: how to define extraordinary ability. Therefore, the INS definition of that term is binding unless it is unreasonable.

■ The INS regulations interpreting § 203(b)(1)(A) define extraordinary ability as "a level of expertise indicating that the individual is one of that small percentage who have risen to the very top of the field of endeavor." 8 C.F.R. § 204.5(h)(2). As further clarification, the regulations explain as follows:

> (3) Initial evidence. A petition for an alien of extraordinary ability must be accompanied by evidence that the alien has sustained national or international acclaim and that his or her achievements have been recognized in the field of expertise. Such evidence shall include evidence of a one-time achievement (that is, a major, international[ly] recognized award), or at least three of the following:
>
> > (i) Documentation of the alien's receipt of lesser nationally or internationally recognized prizes or awards for excellence in the field of endeavor;
> >
> > (ii) Documentation of the alien's membership in associations in the field for which classification is sought, which require outstanding achievements of their members, as judged by recognized national or international experts in their disciplines or fields;
> >
> > (iii) Published material about the alien in professional or major trade publications or other major media, relating to the alien's work in the field for which classification is sought. Such evidence shall include the title, date, and author of the material, and any necessary translation;
> >
> > (iv) Evidence of the alien's participation, either individually or on a panel, as a judge of the work of others in the same or an allied field of specification for which classification is sought;
> >
> > (v) Evidence of the alien's original scientific, scholarly, artistic, athletic, or business-related contributions of major significance to the field;
> >
> > (vi) Evidence of the alien's authorship of scholarly articles in the field, in professional or major trade publications or other major media;
> >
> > (vii) Evidence of the display of the alien's work in the field at artistic exhibitions or showcases;
> >
> > (viii) Evidence that the alien has performed in a leading or critical role for organizations or establishments that have a distinguished reputation;
> >
> > (ix) Evidence that the alien has commanded a high salary or other significantly high remuneration for services, in relation to others in the field; or
> >
> > (x) Evidence of commercial successes in the performing arts, as shown by box office receipts or record, cassette, compact disk, or video sales.
>
> (4) If the above standards do not readily apply to the beneficiary's occupation, the petitioner may submit comparable evidence to establish the beneficiary's eligibility.

8 C.F.R. § 204.5(h)(3), (4). Under the INS' view, membership on a major league team does not by itself qualify an athlete as one having extraordinary ability, though it may help to establish that the athlete meets several of the criteria listed. In the INS' words, "Not all athletes, particularly those new to major league competition, would be able to meet [the sustained national or international acclaim] standard. A blanket rule for all major league athletes would contravene Congress' intent to reserve this category to 'that small percentage of individuals who have risen to the very top of their field of endeavor.'" 56 Fed.Reg. 60897, 60899 (Nov. 29, 1991).

We agree with prior decisions in this district holding that the INS' definition of extraordinary ability is a permissible interpretation of § 203(b)(1)(A) and therefore is controlling here. *Racine v. I.N.S.,* No. 94 C

2548, 1995 WL 153319, at \*4 (N.D.Ill. Feb. 16, 1995); *Grimson v. INS,* No. 93 C 3354, slip op. at 6 (N.D.Ill. Sept. 9, 1993). But our conclusion that the INS' definition is binding does not mean that the Service correctly applied the definition to the facts of Muni's case, and that is the central question posed by the motions for summary judgment.

## B. *Application of the Definition to the Facts*

 In reviewing the denial of a visa petition we must defer to the decision of the INS unless it constituted an abuse of discretion. The Seventh Circuit has held that the INS abuses its discretion when its decision (a) is made without rational explanation, (b) inexplicably departs from established policies, or (c) rests on an impermissible basis such as race discrimination. *Bal v. Moyer,* 883 F.2d 45, 46 (7th Cir.1989); *Achacoso–Sanchez v. I.N.S.,* 779 F.2d 1260, 1265 (7th Cir.1985). Muni does not contend that the INS' decision rested on an impermissible basis, but he does argue that it was against the weight of the evidence and deviated from its own policies and precedents. We need consider only his first contention because we find it dispositive of the motions before us.

 The INS acts without rational explanation (and therefore abuses its discretion) "when it fails to weigh important factors and to state its reasons for denying relief." *Vergara–Molina v. I.N.S.,* 956 F.2d 682, 685 (7th Cir.1992).[6] We find that the INS abused its discretion here because it failed to consider several facts that supported Muni's petition and failed to explain why the facts it did consider were insufficient to establish Muni's extraordinary ability.[7]

### 1. *Individual Facts*

First, the INS found that Muni's role in the Oilers' three Stanley Cup victories had not been established. This conclusion overlooks some rather obvious facts. As Muni points out, there is a direct correlation between a team's performance and its players' performances, and the correlation is even stronger where key players are concerned. The facts that Muni was a starting defenseman for the Oilers and had one of the team's top plus-minus ratios strongly suggest that he was a key player.[8] Thus the team's performance reflects his individual ability. The INS seems to believe that being a good player on a great team does not establish one's ability, but it offers no explanation why we should accept such a counterintuitive belief.

Second, the INS discounted the awards Muni received, saying that he had not shown what was necessary to qualify for the awards or what significance they have. We disagree. We think the awards—best hitting defenseman, most underrated defenseman—are rather self-explanatory, and the publications—the official NHL magazine and the largest hockey magazine—are certainly significant and reputable. The INS had no legitimate basis for refusing to consider the awards as evidence of Muni's ability.

Third, the INS did not adequately address evidence that Muni commands a high salary. The evidence showed that he made more than the average NHL defenseman in 1992–93 and that his pay increased by $150,000 for the 1993–94 and 1994–95 seasons. Thus his salary is well above average. Moreover, since a few very highly paid players can skew the average salary upward, it is reasonable to assume that a player making even the average salary is making more than most other

---

6. We review the factual findings underlying the INS' exercise of its discretion to determine whether they are supported by substantial evidence—that is, evidence that a reasonable person would find adequate to support the conclusion the INS reached. *Patel v. I.N.S.,* 811 F.2d 377, 382 (7th Cir.1987); *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971).

7. We analyze the AAU's decision rather than the director's because it contains the more comprehensive recitation of the INS' arguments and represents INS' final word on Muni's petition.

8. We take judicial notice of the fact that a team's best players are usually those in its starting lineup. Even if this was not the case here, other evidence establishes that Muni was one of the team's leaders in plus-minus ratios, which indi-

players.[9] *See Grimson v. I.N.S.*, No. 94 C 5243, 1995 WL 134755, at *3 (N.D.Ill. Mar. 23, 1995) ("Obviously, the superstars of the NHL make tremendously high salaries, and that can skew any average."). Yet the INS stated that because Muni's salary "is well below the top salaries earned in the NHL ... it has not been established that [his] salary is high in relation to that of other professional hockey players" (Admin.Rec. at 4). This statement contains two errors: ignorance of the simple math explained above and an assumption (which we reject below) that a player must be one of the League's superstars to be considered to have extraordinary ability.

Fourth, the INS gave short shrift to the articles Muni submitted to support his petition. These articles do not establish that Muni is one of the stars of the NHL, but that is not the applicable standard. Under the INS' own regulations, all Muni need show is that there is "[p]ublished material about [him] in professional or major trade publications or other major media, relating to [his] work in the field for which classification is sought." 8 C.F.R. § 204.5(h)(3)(iii). The articles Muni submitted, which appeared in various newspapers and hockey magazines, clearly fit this requirement; even the INS admits that some of the articles "discuss [Muni's] hitting ability and his record as a defenseman" (Admin.Rec. at 4). Yet the INS did not explain why the articles did not qualify as proof of Muni's ability.

Finally, the INS completely ignored the eight affidavits Muni submitted.[10] Those affidavits, sworn to by veteran NHL players of considerable renown,[11] describe Muni as "an excellent defenseman," "one of the best defenseman in professional hockey," "a promi-

nent hockey player in the NHL with great skating and defensive abilities," "one of the better defenders in the game," and "one of the premier defensemen in the NHL" (Admin.Rec. at 105, 107, 109, 111, 113). The INS' failure even to consider these affidavits is clear evidence that it did not adequately evaluate the facts before it. The affidavits establish that Muni is, at minimum, an above-average player whose peers—the world's best hockey players—respect his athletic abilities. Better evidence of an alien's extraordinary ability would be difficult to find, yet the INS did not even mention it in its decision.

### 2. Totality of the Evidence

In sum, Muni presented evidence that he is an NHL veteran who was a starting player on the League's best team for several years, has a reputation among his peers as an excellent defenseman, earns a salary well above average for a defenseman, and has been recognized in major media publications. As previously noted, 8 C.F.R. § 204.5(h)(3) requires an alien to show that he has sustained national or international acclaim and recognition in his field. Such evidence must include "evidence of a one-time achievement (that is, a major, international[ly] recognized award)" or evidence that falls into at least three of the ten categories set forth in subsections (h)(3)(i)–(x) of the regulations.[12] The Oilers' Stanley Cup victories while Muni was a key player arguably are evidence of a major, internationally recognized award that establishes Muni's international acclaim and recognition in his field. But even if sustained membership on the championship team is not enough, Muni's evidence still fits into five of the ten categories. While the

cates that he was indeed one of the team's best defensemen.

**9.** In other words, the median salary would probably be a more useful figure for the INS to consider.

**10.** The AAU did not even mention these affidavits in its decision. The director's prior decision at least acknowledged that the affidavits characterized Muni as an excellent and hard-hitting defenseman. But the director made no effort to explain why these affidavits were insufficient to

help establish Muni as a player of exceptional ability; she merely pointed out that he had not been selected to an all-star team or received official recognition as an extraordinary player. As explained below, this is not the correct standard.

**11.** Affiants include hockey greats Basil McRae, Bernie Nichols, Jeremy Roenick, and Chris Chelios.

**12.** The evidence seems to satisfy categories (i), (ii), (iii), (viii), and (ix).

satisfaction of the three-category production requirement does not mandate a finding that the petitioner has sustained national or international acclaim and recognition in his field, it is certainly a start, and the INS made no attempt to explain why Muni's evidence did not meet the acclaim and recognition standard. Thus, it has not only failed to explain why it does not accept some of the individual facts Muni presents, it has also failed to explain why the sum of those facts and others is insufficient to warrant granting his petition. We deem such arbitrary decision-making an abuse of discretion.

We think there is a deeper problem here than the INS' failure to give fair consideration to all the evidence Muni presented in support of his petition. The Service also misapplied its own definition of extraordinary ability. It apparently was under the impression that only all-stars or the League's highest-paid players have extraordinary ability. That is an overly grudging interpretation of its own regulation, which defines an athlete of extraordinary ability as "one of that small percentage who have risen to the very top of the field of endeavor." 8 C.F.R. § 204.5(h)(2). *See Grimson*, 1995 WL 134755 at *6 ("This court does not believe . . . that only superstars can qualify as having extraordinary ability."). There was considerable evidence before the INS that Muni is a very good professional hockey player— and therefore one of those at the top of his field—yet the INS disregarded that evidence.

### CONCLUSION

We conclude that the INS' denial of Muni's petition was an abuse of discretion. Muni's motion for summary judgment is granted and the INS' motion is denied. The case is remanded for further proceedings consistent with this opinion.