**Allan Stuart GRIMSON, a/k/a, Stu Grimson, Plaintiff,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE and Doris Meissner, Commissioner, Defendants.**

No. 94 C 5243.

United States District Court, N.D. Illinois, Eastern Division.

July 1, 1996.

Richard James Puchalski, Sklodowski, Franklin, Puchalski & Reimer, Chicago, IL, for plaintiff.

James G. Hoofnagle, United States Attorney's Office, Chicago, IL, for defendants.

## MEMORANDUM OPINION AND ORDER

GETTLEMAN, District Judge.

This case, much like the National Hockey League playoffs and the Energizer Bunny, just keeps going and going and going. Plaintiff Allan Stuart Grimson, a citizen of Canada, has filed a complaint for declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201, 1361, seeking to overturn defendant Immigration and Naturalization Service's ("INS") denial of his visa petition. Both parties have moved for summary judgment pursuant to Fed.R.Civ.P. 56. For the reasons set forth below, plaintiff's motion is granted, defendant's cross-motion is denied, and the decision of the INS is reversed.

### PROCEDURAL HISTORY

This is the third time that this case has reached this district court. Plaintiff is a professional hockey player. He has played in the "professional leagues" since the 1982–83 season when he began playing for the Regina, Saskatchewan team in the now defunct World Hockey League. He has been playing in the NHL since the 1989 season. He is currently a member of the Detroit Red Wings, one of the better teams in the league.

Plaintiff initially filed a visa petition with defendant INS on January 20, 1993, seeking classification as a priority worker of extraordinary ability pursuant to 8 U.S.C. § 1153(b)(1)(A). The petition was denied by the Director of the INS Northern Service Center on the ground that plaintiff had failed to demonstrate that he was a player of extraordinary ability as defined by the INS. Plaintiff appealed to the Administrative Appeals Unit ("AAU"), contending that he had achieved sustained national and international acclaim as a professional hockey player, and that the Northern Service Center had recently classified four other hockey players of comparable ability as aliens of extraordinary ability.

The AAU affirmed the denial of plaintiff's petition, holding that, "while the record indicates that the petitioner had played several seasons with an NHL team, it has not been established that the petitioner has achieved the sustained national or international ac-

claim required for classification as an alien with extraordinary ability, that he is one of the small percentage who have risen to the very top of his field of endeavor, or that his entry into the United States would substantially benefit prospectively the United States."

Plaintiff then filed an action in this court pursuant to 28 U.S.C. §§ 2201 and 1361 for declaratory and injunctive relief with respect to the INS's denial of his visa petition. Judge Kocoras, to whom that case was assigned, remanded it back to the INS for further evidentiary proceedings, concluding that remand would allow plaintiff to take into consideration the INS's statutory interpretation of extraordinary ability when submitting further documentary evidence. Of particular note is Judge Kocoras's conclusion rejecting the INS's argument that it need not compare plaintiff's petition to those of other hockey players who had been granted visas, concluding that such position "not only lacked merit but borders on the specious." Judge Kocoras concluded that how the INS treated others in the field, particularly those alleged to possess no greater skill than petitioner, was highly irrelevant under the statutory scheme.

Plaintiff's petition was again denied by the Director of the Northern Service Center, which denial was again affirmed by the AAU. Plaintiff then filed the present action seeking declaratory and injunctive relief. On March 23, 1995, this court issued a memorandum opinion and order again remanding the case to the INS for further evidentiary proceedings. This court specifically directed plaintiff to submit and defendant to consider evidence regarding the necessity of a player with plaintiff's style of play and abilities, and evidence comparing his skill, salary level and other abilities to those of comparable players in the NHL, players who fulfill the same role for their respective teams. In addition, the court directed defendant to consider plaintiff's argument that a sustained career in the NHL demonstrates extraordinary ability.

Consistent with this court's instruction, on remand plaintiff submitted evidence of his current salary and contract with the Detroit Red Wings, a table from the Hockey News showing the 1996 players' salaries, newspaper and magazine articles about plaintiff, and an affidavit from Darren Pang, former renown NHL goal tender and current television broadcaster and NHL analyst for ESPN. Pang is a recognized expert on NHL hockey. Pang's affidavit lists all the "enforcers" in the league and their current salaries. It also sets forth the necessity for an enforcer, and indicates that most teams carry two such players on their rosters. Finally, Pang's affidavit indicates that plaintiff is currently the third rated and third highest paid enforcer in the NHL (the other two being paid more because of their goal scoring ability), and that plaintiff was rated the fifth best enforcer in 1993 when he filed his original petition.

## STANDARD OF REVIEW

 This court's review in this case is limited to the determination of whether the INS's denial of plaintiff's visa petition constituted an abuse of discretion. The test for abuse of discretion in an immigration case is as follows:

> The decision must be upheld unless it was made without a rational explanation, inexplicably departs from established policies, or rests on an impermissible basis such as invidious discrimination against a particular race or group.

*Bal v. Moyer*, 883 F.2d 45, 47 (7th Cir.1989) (citing *Achacoso–Sanchez v. INS*, 779 F.2d 1260, 1265 (7th Cir.1985)). Factual findings which underlie the exercise of discretion are to be tested under the substantial evidence test. *Patel v. INS*, 811 F.2d 377, 382 (7th Cir.1987). It is pursuant to these standards of review that the court once again analyzes the cross-motions for summary judgment.

## DISCUSSION

As in plaintiff's previous case, this case turns on the interpretation of "extraordinary ability" as used in the priority worker category under 8 U.S.C. § 1153(b)(1)(A)(i), which provides:

> (b) Preference allocation for employment-based immigrants
>
> Aliens subject to the worldwide level specified in section 1151(d) of this title for

employment-based immigrants in a fiscal year shall be allotted visas as follows:

(1) Priority workers

Visas shall first be made available in a number not to exceed 28.6 percent of such worldwide level, plus any visas not required for the classes specified in paragraphs (4) and (5), to qualified immigrants who are aliens described in any of the following subparagraphs (A) through (c):

(A) Aliens with extraordinary ability

An alien is described in this subparagraph if—

(i) the alien has extraordinary ability in the sciences, arts, education, business, or athletics which has been demonstrated by sustained national or international acclaim and whose achievements have been recognized in the field through extensive documentation.

The statute itself does not define extraordinary ability; however, the regulations promulgated by the INS define the term as "a level of expertise indicating that the individual is one of that small percentage who has risen to the very top of the field of endeavor." 8 C.F.R. § 204.5(h)(2). A petition for relief under this section must be accompanied by evidence that the alien has "sustained national or international acclaim and that his or her achievements have been recognized in the field of expertise." 8 C.F.R. § 204.5(h)(3). The regulations set forth various types of evidence that may be submitted to meet this evidentiary burden, including the documentation of memberships and associations which require outstanding achievements, major media publications relating to the alien's work in the field at issue, and evidence that the alien has commanded a large salary in relation to others in the field. 8 C.F.R. § 204.5(h)(3)(i–ix).

On remand from this court, the Director again completely rejected all plaintiff's evidence and denied his petition. First, relying on *In the Matter of Katigbak,* 14 I & N

Decisions 45 (1971); *Matter of Wing's Tea House,* 16 I & N Decisions 158 (1977), and 8 CFR 103.2(b)(12) (which became effective in 1994, after plaintiff filed his petition), the Director determined that evidence relating to plaintiff's career after January 12, 1993 (the day plaintiff filed petition) would not be considered because it could not establish eligibility at the time of filing the petition.[1]

Next, the Director rejected plaintiff's argument that a sustained career in professional hockey and four years in the NHL should be considered as evidence of extraordinary ability. The Director determined that plaintiff had failed to present evidence that four years in the NHL as an enforcer qualified as a sustained career. The Director then rejected those portions of Pang's affidavit in which he attested that plaintiff's $300,000 salary in 1993 ranked him among the highest paid enforcers, and that plaintiff was considered among the top five enforcers in the league at that time. The basis for rejecting this evidence was that the affidavit contained no backup information for what the Director determined to be conclusory statements. The affidavit, however, indicates Mr. Pang's background and extensive knowledge of the NHL. He clearly states that he is familiar with plaintiff and the other enforcers in the league, and gives a basis for his opinions. He further states that if called to testify, he would testify that in his opinion in 1993 plaintiff was one of the top five enforcers in the league, and was so considered among his peers.

■ It is apparent to this court that at the heart of defendant's refusal to grant plaintiff a visa (as it has to other comparable NHL players) is its distaste for the role he plays on a hockey team. As stated in the Director's decision, "the service has never argued that the role of enforcer is not prevalent in the NHL. The *necessity* of such a role appears to be debatable. The service does argue that the sport itself has never condoned the kind of activity that petitioner is known for, as evidenced by the number of penalty minutes he is charged." (emphasis in

1. Plaintiff filed a motion to reopen and reconsider, attempting to submit additional evidence subsequent to the date of his petition. Plaintiff's motion was apparently denied by implication without comment.

original.) The decision further states, "[A]t the time the petition was filed, the petitioner's main claim to fame was that he held the record for the most penalty minutes in a game. The amount of penalties the petitioner amasses is indicative of the amount of fighting he does but quantity does not equate to extraordinary ability." Despite this language, however, the only evidence presented to the Director was that plaintiff was the fifth best enforcer in the league at the time he filed his petition. The decision to simply ignore this evidence was an abuse of discretion.

Moreover, it is apparent from the above quoted language that the Director simply rejects the notion that an enforcer can have extraordinary ability limited to the role that he plays on a hockey team. Indeed, as set forth in defendant's memorandum in support of his cross-motion for summary judgment, defendant's position remains that because plaintiff engages in conduct which is "disfavored," his abilities cannot properly be considered as a factor supportive of his claim to be an athlete of extraordinary ability. This court disagrees. The only evidence that was presented to the Director indicates that the role of an enforcer is necessary to the success of an NHL hockey team. The fact that a player is penalized for fighting does not mean that it is not both a necessary and accepted element of the game. Indeed, if it was not a necessary and accepted element of the game, the league would simply ban fighting altogether. Moreover, plaintiff presented evidence that his role as an enforcer entails much more than fighting. Pang's affidavit indicates that the role of an enforcer is to fight when necessary, but also to protect the team stars from being roughed up by the opposing team. An enforcer also serves as a deterrent to fighting, depending upon the reputation of the team's enforcer.

The fact remains that plaintiff has presented evidence sufficient to demonstrate that he is currently among the top three players in the world at what he does, and in 1993, when he filed his petition, he was among the top five players in the world. It goes without saying that there are countless players attempting to replace him every day. Yet, in 1993 he was, and remains today, among the best in the world. He has reached the very top of his field of endeavor. There is virtually no evidence in the record (let alone substantial evidence) to support defendant's finding that plaintiff is not among the best in the world, or that he is not an athlete of extraordinary ability.

The court concludes that the decision to reject plaintiff's role and unquestioned ability as an enforcer was without rational explanation, and that there was not substantial evidence for the factual finding that plaintiff is not at the top of his field of endeavor. Accordingly, plaintiff's motion for summary judgment is granted, defendant's cross-motion is denied, and defendant is ordered to issue plaintiff the visa he seeks.

### CONCLUSION

For the reasons set forth above, plaintiff's motion for summary judgment is granted, defendant's cross-motion is denied and defendant is ordered to issue a visa to plaintiff.