**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

POGHOS KAZARIAN,
            *Plaintiff-Appellant,*

v.

US CITIZENSHIP AND IMMIGRATION
SERVICES, a Bureau of the
Department of Homeland Security;
JOHN DOES, 1 through 10,
            *Defendants-Appellees.*

No. 07-56774

D.C. No.
CV-07-03522-R-E

ORDER AND
OPINION

Appeal from the United States District Court
for the Central District of California
Manuel L. Real, District Judge, Presiding

Argued and Submitted
December 9, 2008—Pasadena, California

Filed March 4, 2010

Before: Harry Pregerson, Dorothy W. Nelson and
David R. Thompson, Circuit Judges.

Opinion by Judge D.W. Nelson;
Concurrence by Judge Pregerson

## COUNSEL

Ruben N. Sarkisian, Glendale, California, for plaintiff-appellant Poghos Kazarian.

Craig W. Kuhn and Elizabeth J. Stevens, Office of Immigration Litigation, Department of Justice, Washington, D.C.; for defendant-appellee U.S. Citizenship & Immigration Services.

## ORDER

The opinion with dissent filed on September 4, 2009, and published at 580 F.3d 1030 (9th Cir. 2009), is withdrawn and superceded by the opinion filed concurrently herewith.

With the filing of the new opinion, appellant's pending petition for rehearing/petition for rehearing en banc is DENIED as moot, without prejudice to refiling a subsequent petition for rehearing and/or petition for rehearing en banc. *See* 9th Cir. G.O. 5.3(a).

## OPINION

D.W. NELSON, Senior Circuit Judge:

Poghos Kazarian appeals the District Court's grant of summary judgment to the United States Citizenship and Immigration Service ("USCIS"), finding that the USCIS's denial of an "extraordinary ability" visa was not arbitrary, capricious, or contrary to law. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

## *FACTUAL AND PROCEDURAL BACKGROUND*

On December 31, 2003, Poghos Kazarian, a thirty-four-year-old native and citizen of Armenia, filed an application for an employment-based immigrant visa for "aliens of extraordinary ability" (Form I-140) contending that he was an alien with extraordinary ability as a theoretical physicist.

Kazarian received a Ph.D in Theoretical Physics from Yerevan State University ("YSU") in Yerevan, Armenia, in 1997. From 1997 to 2000, he remained at YSU as a Research Associate, where, among other things, he "reviewe[d] [the] diploma works of the Department's graduates."

At YSU, Kazarian specialized in non-Einsteinian theories of gravitation. According to a colleague, "[t]his work offered a mechanism for the control of solutions' accuracy, which guarantees the accuracy of calculations in many theories of gravitation." Kazarian "solve[d] [the] more than 20 year[ ] old problem of construction of the theory, satisfying the cosmogony conception of worldwide acknowledged scientist, academician V.A. Hambartsumian."

Since 2000, Kazarian has served as a Physics / Math / Programming Tutor, an Adjunct Physics and Mathematics Instructor, and a Science Lecture Series speaker at Glendale

Community College ("GCC"). Between 2000 and 2004, Kazarian's work at GCC was on a volunteer basis.

In support of his application, Kazarian submitted several letters of reference. The first reference was a letter from Dr. Kip S. Thorne, the Feynman Professor of Theoretical Physics at California's Institute of Technology. Dr. Thorne, who worked in the same research group as Kazarian, stated that he had "formed a good opinion of Dr. Kazarian's research. It is of the caliber that one would expect from a young professor at a strong research-oriented university in the United States." Kazarian also provided letters from professors at YSU, stating that Kazarian "possesse[d] great ability and considerable potency in science," was "a young scientist with enough scientific potential," had "high professionalism," and had "displayed himself as exceptionally diligent, hard-working, [and] highly qualified." Finally, Kazarian submitted three letters from colleagues at GCC praising his hard work and active participation at GCC.

Kazarian also noted that he had authored a self-published textbook, titled "Concepts in Physics: Classical Mechanics." According to one of his colleagues at GCC, the book "is certain to be required reading in many secondary schools, colleges and universities throughout the country." Kazarian, however, presented no evidence that the book was actually used in any class. Kazarian also submitted two scholarly articles where the authors acknowledged him for his useful scientific discussions. Kazarian also submitted his resume, which listed six publications in *Astrophysics* that he had authored or co-authored, as well as one e-print published in the public web archives of the Los Alamos National Laboratory.

Finally, Kazarian presented evidence of his Science Lecture Series at GCC. His resume also listed lectures at the 17th and 20th Pacific Coast Gravity Meetings, the Conference on Strong Gravitational Fields at UC Santa Barbara, the 8th International Symposium on the Science and Technology of

Light Sources, and the Foundations of Gravitation and Cosmology, International School-Seminar.

In August 2005, the USCIS denied the petition. Kazarian appealed the denial to the Administrative Appeals Office ("AAO"). The AAO dismissed the appeal, finding that Kazarian failed to satisfy any of the evidentiary criteria set forth in the relevant "extraordinary ability" visa regulations. Having exhausted his administrative remedies, Kazarian filed a complaint in the Central District of California. The District Court granted the USCIS's motion for summary judgment, and Kazarian timely appealed to this court.

## STANDARD OF REVIEW

This court "review[s] the entry of summary judgment *de novo*." *Family Inc. v. U.S. Citizenship & Immigration Servs.*, 469 F.3d 1313, 1315 (9th Cir. 2006). "However, the underlying agency action may be set aside only if 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.' " *Id.* (quoting 5 U.S.C. § 706(2)(A)). "We have held it an abuse of discretion for the Service to act if there is no evidence to support the decision or if the decision was based on an improper understanding of the law." *Tongatapu Woodcraft Hawaii Ltd. v. Feldman*, 736 F.2d 1305, 1308 (9th Cir. 1984) (internal quotations omitted).

"In circumstances where an agency errs, we may evaluate whether such an error was harmless." *Gifford Pinchot Task Force v. U.S. Fish and Wildlife Serv.*, 378 F.3d 1059, 1071 (9th Cir. 2004); *see* 5 U.S.C. § 706. "In the context of agency review, the role of harmless error is constrained. The doctrine may be employed only 'when a mistake of the administrative body is one that *clearly* had *no bearing* on the procedure used or the substance of decision reached.' " *Gifford Pinchot*, 378 F.3d at 1071 (citing *Buschmann v. Schweiker*, 676 F.2d 352, 358 (9th Cir. 1982)) (emphasis added by the *Gifford Pinchot* court). "We will not usually overturn agency action unless

there is a showing of prejudice to the petitioner." *Safari Aviation Inc. v. Garvey*, 300 F.3d 1144, 1150 (9th Cir. 2002).

## *DISCUSSION*

### A.   THE "EXTRAORDINARY ABILITY" VISA

**[1]**  Pursuant to 8 U.S.C. § 1153(b)(1)(A), aliens may apply for a visa on the basis of "extraordinary ability." An alien can prove an extraordinary ability in one of two ways. The first is "evidence of a one-time achievement (that is, a major, international recognized award)." 8 C.F.R. § 204.5(h)(3). Receipt of the Nobel prize is the quintessential example of a major award. H.R. Rep. No. 101-723(I & II) (1990), *reprinted in* 1990 U.S.C.C.A.N. 6710, 6739. Kazarian concedes that he has won no such prize.

The second way to prove extraordinary ability is to provide evidence of at least three of the following:

(i) Documentation of the alien's receipt of lesser nationally or internationally recognized prizes or awards for excellence in the field of endeavor;

(ii) Documentation of the alien's membership in associations in the field for which classification is sought, which require outstanding achievements of their members, as judged by recognized national or international experts in their disciplines or fields;

(iii) Published material about the alien in professional or major trade publications or other major media, relating to the alien's work in the field for which classification is sought. Such evidence shall include the title, date, and author of the material, and any necessary translation;

(iv) Evidence of the alien's participation, either individually or on a panel, as a judge of the work of oth-

ers in the same or an allied field of specification for which classification is sought;

(v) Evidence of the alien's original scientific, scholarly, artistic, athletic, or business-related contributions of major significance in the field;

(vi) Evidence of the alien's authorship of scholarly articles in the field, in professional or major trade publications or other major media;

(vii) Evidence of the display of the alien's work in the field at artistic exhibitions or showcases;

(viii) Evidence that the alien has performed in a leading or critical role for organizations or establishments that have a distinguished reputation;

(ix) Evidence that the alien has commanded a high salary or other significantly high remuneration for services, in relation to others in the field; or

(x) Evidence of commercial successes in the performing arts, as shown by box office receipts or record, cassette, compact disk, or video sales.

8 C.F.R. § 204.5(h)(3). If a petitioner has submitted the requisite evidence, USCIS determines whether the evidence demonstrates both a "level of expertise indicating that the individual is one of that small percentage who have risen to the very top of the[ir] field of endeavor," 8 C.F.R. § 204.5(h)(2), and "that the alien has sustained national or international acclaim and that his or her achievements have been recognized in the field of expertise." 8 C.F.R. § 204.5(h)(3). Only aliens whose achievements have garnered "sustained national or international acclaim" are eligible for an "extraordinary ability" visa. 8 U.S.C. § 1153(b)(1)(A)(i).

The "extraordinary ability" visa can be better understood in context. Under the Immigration Act of 1990, thousands of employment-based visas were created according to three employment preferences. Pub. L. No. 101-649, 101 Stat. 4978. "Aliens with extraordinary ability" are "priority workers" and have the first preference. 8 U.S.C. § 1153(b)(1).

"*Extraordinary* ability" is distinct from "*exceptional* ability," however, which receives second preference. *Compare id.* § 1153(b)(1)(A) (emphasis added), *with id.* § 1153(b)(2) (emphasis added).[1] To qualify for the "exceptional ability" visa, a petitioner must make a lesser showing of ability, and need only show three of the following:

> (A) An official academic record showing that the alien has a degree, diploma, certificate, or similar award from a college, university, school, or other institution of learning relating to the area of exceptional ability;
>
> (B) Evidence in the form of letter(s) from current or former employer(s) showing that the alien has at least ten years of full-time experience in the occupation for which he or she is being sought;
>
> (C) A license to practice the profession or certification for a particular profession or occupation;
>
> (D) Evidence that the alien has commanded a salary, or other remuneration for services, which demonstrates exceptional ability;
>
> (E) Evidence of membership in professional associations; or

---

[1] Skilled workers, professionals, and "other workers" make up the third preference. *Id.* § 1153(b)(3).

(F) Evidence of recognition for achievements and significant contributions to the industry or field by peers, governmental entities, or professional or business organizations.

8 C.F.R. § 204.5(k)(3)(ii).

**[2]** To qualify for an "exceptional ability" visa, however, the alien must also provide evidence that his services are sought by a United States employer. *Id.* The "extraordinary ability" visa thus has considerable advantages. Unlike the "exceptional ability" visa petition, the "extraordinary ability" petition is not dependent on an actual offer for employment in the United States, and is exempt from the time-consuming labor certification process, which requires that employers first test the marketplace for existing qualified domestic workers. *Compare id.* § 204.5(h)(3)(5), *with id.* § 204.5(k)(4).

**[3]** Interpretation of the statutory and regulatory requirements for the "extraordinary ability" visa presents a question of first impression for this court. The scant caselaw indicates that "[t]he regulations regarding this preference classification are extremely restrictive." *Lee v. Ziglar*, 237 F. Supp.2d 914, 918 (N.D. Ill.2002) (finding that "arguably one of the most famous baseball players in Korean history" did not qualify for the visa as a baseball coach for the Chicago White Sox because his acclaim was limited to his skills as a player and not as a coach); *cf. Grimson v. INS*, 934 F.Supp. 965, 969 (N.D. Ill. 1996) (finding denial arbitrary and capricious where NHL hockey enforcer was one of the top three players in the world and agency improperly discounted the importance of the enforcer position); *Muni v. INS*, 891 F.Supp. 440 (N.D. Ill. 1995) (finding the agency improperly discounted evidence for an NHL hockey player who won the Stanley Cup three times, won "most underrated defenseman," was paid more than the average NHL player, submitted numerous articles establishing his stature in the hockey world, and provided affidavits from eight renowned hockey players stating that he was highly

regarded); *Buletini v. INS*, 860 F.Supp. 1222 (E.D. Mich. 1994) (finding denial was arbitrary and capricious where Albanian physician won a national award, published a medical dictionary and numerous articles, was responsible for general health projects, and served as an adjunct professor); *Matter of Price*, 20 I. & N. Dec. 953, 955-56 (BIA 1994) (granting the visa petition to a professional golfer who won the 1983 World Series of Golf and the 1991 Canadian Open, ranked 10th in the 1989 PGA Tour, collected $714,389 in 1991, provided numerous affidavits from well-known and celebrated golfers, and received widespread major media coverage).

## B.   APPLICATION TO KAZARIAN

The AAO found that Kazarian did not meet any of the regulatory criteria. Only four of the ten are at issue in this appeal. We find that the AAO erred in its consideration of two of these issues.

### 1.   *Authorship of Scholarly Articles in the Field of Endeavor*

Pursuant to 8 C.F.R. § 204.5(h)(3)(vi), Kazarian submitted proof of his six articles in *Astrophysics* and his e-print in the Los Alamos National Laboratory archives, but did not demonstrate that other scholars had cited to his publications. The AAO held that without evidence of such citations, Kazarian's articles did not meet the regulatory definition of evidence, because "publication of scholarly articles is not automatically evidence of sustained acclaim" and "we must consider the research community's reaction to these articles."

**[4]** The AAO's conclusion rests on an improper understanding of 8 C.F.R. § 204.5(h)(3)(vi). Nothing in that provision requires a petitioner to demonstrate the research community's reaction to his published articles before those articles can be considered as evidence, and neither USCIS nor

an AAO may unilaterally impose novel substantive or evidentiary requirements beyond those set forth at 8 C.F.R. § 204.5. *Love Korean Church v. Chertoff*, 549 F.3d 749, 758 (9th Cir. 2008). While other authors' citations (or a lack thereof) might be relevant to the final merits determination of whether a petitioner is at the very top of his or her field of endeavor, they are not relevant to the antecedent procedural question of whether the petitioner has provided at least three types of evidence. 8 C.F.R. § 204.5(h)(3). "If the agency intended to impose [peer citations] as a threshold requirement, we have little doubt that such records would have been included among the detailed substantive and evidentiary requirements set forth at 8 C.F.R. § 204.5[(h)(3)(i)-(x)]." *Love Korean Church*, 549 F.3d at 758.

### 2.  *Participation as a Judge of the Work of Others*

Pursuant to 8 C.F.R. § 204.5(h)(3)(iv), Kazarian submitted proof that he was a judge of graduate-level diploma works at Yerevan State University. The AAO held that "reviewing 'diploma works' for fellow students at one's own university is not persuasive evidence of acclaim beyond that university," and that absent "evidence that the petitioner served as an external dissertation reviewer for a university with which he is not otherwise affiliated," Kazarian's submission did not meet the regulatory definition of evidence.

**[5]** The AAO's conclusion rests on an improper understanding of 8 C.F.R. § 204.5(h)(3)(iv). Nothing in that provision suggests that whether judging university dissertations counts as evidence turns on which university the judge is affiliated with. Again, while the AAO's analysis might be relevant to a final merits determination, the AAO may not unilaterally impose a novel evidentiary requirement. *Love Korean Church*, 549 F.3d at 758.

### 3. Evidence of Original Scientific or Scholarly Contributions of Major Significance in the Field of Endeavor

**[6]** Pursuant to 8 C.F.R. § 204.5(h)(3)(v), Kazarian submitted letters from physics professors attesting to his contributions in the field. The AAO found that his contributions were not major, and thus did not meet the regulatory definition of evidence. The AAO's analysis here is consistent with the relevant regulatory language, and the AAO's determination that Kazarian did not submit material that met the regulatory definition of evidence set forth at 8 C.F.R. § 204.5(h)(3)(v) is neither arbitrary, capricious, nor an abuse of discretion.

### 4. Display of the Alien's Work at Artistic Exhibitions or Showcases

**[7]** Pursuant to 8 C.F.R. § 204.5(h)(3)(vii), Kazarian submitted proof that he had self-published a textbook, had given lectures at a community college, and had made presentations at conferences. The AAO found that none of these activities were displays at artistic exhibitions or showcases. The AAO's analysis here is again consistent with the relevant regulatory language, and the AAO's determination that Kazarian did not submit evidence as defined at 8 C.F.R. § 204.5(h)(3)(vii) is neither arbitrary, capricious, nor an abuse of discretion.

## C. HARMLESSNESS

Having found that the AAO erred by unilaterally introducing new evidentiary requirements into 8 C.F.R. § 204.5(h)(3)(iv) and (vi), we must now determine whether these errors were prejudicial. 5 U.S.C. § 706; *Tucson Herpetological Soc. v. Salazar*, 566 F.3d 870, 879-80 (9th Cir. 2009). They were not.

The AAO held that Kazarian provided zero of the ten types of evidence set forth at 8 C.F.R. § 204.5(h)(3)(i)-(x). The

AAO should have held that Kazarian presented two types of evidence. The regulation requires three types of evidence. 8 C.F.R. § 204.5(h)(3).

**[8]** Whether an applicant for an extraordinary visa presents two types of evidence or none, the proper procedure is to count the types of evidence provided (which the AAO did), and the proper conclusion is that the applicant has failed to satisfy the regulatory requirement of three types of evidence (as the AAO concluded). 8 C.F.R. § 204.5(h)(3). Here, although the AAO committed clear legal error, that error "clearly had no bearing" on either "the procedure used or the substance of decision reached." *Gifford Pinchot*, 378 F.3d at 1071 (quotations omitted).

### *CONCLUSION*

**[9]** Although Kazarian appears to be a well-respected, promising physicist, who may well have been able to qualify for an "exceptional ability" visa, he instead applied for an "extraordinary ability" visa, and presented only two of the types of evidence set forth at 8 C.F.R. § 204.5(h)(3)(i)-(x), and the "extraordinary ability" visa regulations require three. The AAO's conclusion that Kazarian presented zero types of evidence was in error, but the error was harmless. Kazarian failed to establish his eligibility for an "extraordinary ability" visa, and the District Court correctly granted USCIS' summary judgment motion.

**AFFIRMED.**

---

PREGERSON, Circuit Judge, concurring:

I am pleased to concur in Judge Nelson's opinion. I write separately, however, to emphasize the injustice perpetrated by our immigration laws and system in this case. Dr. Poghos

Kazarian received his Ph.D. in the field of theoretical physics from Yerevan State University and, since arriving in the United States, has continued to research and teach in this challenging field. Starting around 2000, Dr. Kazarian participated in a research group headed by Dr. Kip Thorne at the California Institute of Technology. Dr. Thorne, among others, submitted a letter in support of Dr. Kazarian's visa application. Dr. Kazarian volunteers his teaching services at Glendale Community College and has authored and published his own physics textbook. Dr. Kazarian has received strong words of praise from colleagues at Yerevan State University, Glendale Community College, and the California Institute of Technology. Dr. Kazarian's contributions in the United States have been undoubtedly valuable. Forcing Dr. Kazarian to depart from our country would be undoubtedly wasteful and make one think that there is something haywire in our system. Although, as the opinion points out, Dr. Kazarian did not submit three of the types of evidence required for the "extraordinary visa," he would have been an excellent candidate for an "exceptional ability" visa. Indeed, it was likely the error of an ineffective lawyer that led Kazarian to apply for the wrong visa in the first place.[1]

---

[1]At oral argument, Dr. Kazarian's current counsel represented to the court that the attorney who started Dr. Kazarian on the path of applying for this "extraordinary ability" visa was George Verdin. Verdin is listed as being indefinitely suspended from practice before the Immigration Service, the Immigration Courts, and the Board of Immigration Appeals. Executive Office for Immigration Review, Office of General Counsel, List of Currently Disciplined Practitioners (Aug. 11, 2009), http://www.usdoj.gov/eoir/profcond/chart.htm. Verdin has also been disbarred by the Supreme Court of Hawai'i. *Office of Disciplinary Counsel v. Verdin*, No. 22349 (Haw. Sept. 27, 2001). It is distressing how many good people—including the highly educated and the minimally educated—fall prey to disreputable lawyers known to the immigration system.