**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3384-22

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

FERDINAND C. AUGELLO,

    Defendant-Appellant.

_____

Submitted February 5, 2025 – Decided May 8, 2025

Before Judges Currier and Paganelli.

On appeal from the Superior Court of New Jersey, Law Division, Atlantic County, Indictment No. 18-04-0517.

Jennifer N. Sellitti, Public Defender, attorney for appellant (Andrew R. Burroughs, Designated Counsel, on the briefs).

William E. Reynolds, Atlantic County Prosecutor, attorney for respondent (Courtney Cittadini, Chief Assistant Prosecutor, of counsel and on the brief; Linda A. Shashoua, on the brief).

PER CURIAM

Defendant Ferdinand C. Augello appeals from the April 17, 2023 order denying his petition for post-conviction relief (PCR) without an evidentiary hearing. Based on our careful review of the record and the application of well-established law, we conclude the PCR court did not misuse its discretion in denying defendant's motion for PCR discovery, and defendant failed to establish trial counsel provided ineffective assistance. We affirm.

On October 2, 2018, following a jury trial, defendant was found guilty of:

> [F]irst-degree racketeering (RICO), N.J.S.A. 2C:41-2(c), and conspiracy to racketeer, N.J.S.A. 2C:41-2(d) (count one); first-degree leader of a drug trafficking network, N.J.S.A. 2C:35-3 (count two); third-degree distribution of a controlled dangerous substance, N.J.S.A. 2C:35-5(a) and N.J.S.A. 2C:35-5(b) (count three); first-degree conspiracy to distribute a controlled dangerous substance, N.J.S.A. 2C:35-5(a) and N.J.S.A. 2C:35-5(b) (count four); first-degree murder, N.J.S.A. 2C:11-3(a)(1) (count five); and first-degree attempted murder, N.J.S.A. 2C:5-2(a)(1) and N.J.S.A. 2C:11-3(a)(1) (count nine), in connection with: the murder of April Kauffman . . ., the wife of Dr. James Kauffman . . .; an OxyContin distribution network operated through [Dr.] Kauffman's medical practice; and a plot to murder [Dr.] Kauffman.
>
> [State v. Augello, No. A-2203-18 (App. Div. Apr. 20, 2021) (slip op. at 1).] [1]

---

[1] We affirmed defendant's convictions on direct appeal. Id. at 3. The New Jersey Supreme Court denied defendant's petition for certification.

2

A-3384-22

Defendant filed a motion for a judgment notwithstanding the verdict or a new trial. On November 21, 2018, trial counsel submitted a letter to the court in support of the motion. In the letter, counsel explained that:

> Two days after the jury delivered its verdict, two former and one current employee of the Atlantic County Prosecutor's Office [(ACPO)] made public complaints against the ACPO and specifically, Prosecutor Damon Tyner, First Assistant Prosecutor Cary Shill and Chief Assistant Prosecutor Seth Levy. The conduct alleged against the three range[d] from mortgage fraud, mishandling of confidential funds, misappropriation of grant funds and sexual harassment – and include[d] specific allegations of Brady violations in the present case.[2]
>
> The complaint is attached. Pages 10-13 detail the allegations involving the Prosecutor's duty to disclose information to the defense and its failure to do so.
>
> Here, . . . defendant seeks to call the two former and one current employee of the [ACPO] as witnesses in the [n]ew [t]rial motion.
>
> . . . .
>
> Here, the witnesses . . . defendant plans to call have publicly stated that the evidence that was withheld by the [ACPO] fa[1]ls squarely within the Brady requirements.

---

[2] In Brady v. Maryland, 373 U.S. 83, 87 (1963), the United States Supreme Court held "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."

A-3384-22

The "complaint" was actually a letter, dated October 4, 2018, from Diane Ruberton, formerly of the ACPO. The trial court noted the "letter d[id] not appear to be a pleading, verified or otherwise." Further, "[t]he letter . . ., show[ed] no indication that the assertions . . . were made under oath or by certification of the purported authors."

On November 30, 2018, the trial court denied defendant's motion to take "oral testimony related to [the] motion hearing unless and until" defendant complied with Rule 1:6-6.[3]

On December 5, 2018, the trial court heard defendant's motion. Trial counsel explained she sought certifications from the complainants, "Diane Ruberton and Heather McManus both formerly of the ACPO and Donna Fetzer who serve[d] as the Chief Assistant Prosecutor in that office." However, after reaching out to the complainants' lawyer on multiple occasions she could not obtain certifications. Trial counsel acknowledged that "[a]bsent certifications . . ., [she] ha[d] no [sworn evidence] in support of the new trial motion for the court." Further, counsel acknowledged that because "[n]either [counsel] nor

---

[3] Under Rule 1:6-6, "[i]f a motion is based on facts not appearing of record or not judicially noticeable, the court may hear it on affidavits made on personal knowledge, setting forth only facts which are admissible in evidence to which the affiant is competent to testify . . . ."

[defendant] ha[d] personal knowledge, . . . certifications from either of [them] would be of no effect."

The State noted that none of defendant's purported witnesses "had any personal knowledge of this case, nor were [they] involved with this prosecution with the exception of . . . First Assistant Ruberton, that was some time ago, and the case did not proceed at that point." Further, the State reviewed the matter and did not "perceive any Brady violations." In addition, "[a]ll discoverable items were" produced.

The trial court stated it received a letter, provided to all counsel, from the attorney for the three purported witnesses. However, the court noted it "could glean nothing in . . . [the] letter that would comply with Rule 1[:]6[-]6 . . . it[ wa]s not a certification, it[ wa]s not even on information or belief." Therefore, the court concluded it would "not consider[] it on the motion."

The trial court found "no Brady violations." Instead, the court found "that the State had made available to the defense all discovery of record" and denied the application.

On January 28, 2022, defendant filed a pro se petition for PCR. PCR counsel filed a supporting brief. Defendant contended: (1) the prosecutor engaged in prosecutorial misconduct, including: (i) "with[holding] Brady

material" both before and during his trial; (ii) a former prosecutor "prejudiced the defense by discussing the case on national television prior to trial"; (iii) a former prosecutor "sought to illegally seize [his] house"; and (iv) "the State fabricated evidence against" him.

Defendant also claimed his trial counsel was ineffective, and, as a result, his defense was prejudiced. Defendant contended trial counsel was:

> (1) . . . ineffective in failing to call Dr. [Michael] Baden as an expert witness at trial; (2) . . . ineffective in failing to explain to [him] that the right to testify was his alone to make and then pressured him into not testifying at trial; (3) . . . ineffective for failing to call other witnesses to testify that [he] had no relationship with Francis Mulholland [the actual shooter of April Kauffman]; (4) . . . ineffective in failing to review discovery with [him] and being abusive toward him; and (5) . . . unprepared at trial when [counsel] failed to object to prejudicial rhetoric throughout the trial and failing to cross-examine witnesses.

During the PCR proceeding, defendant filed a motion for additional discovery. Defendant sought discovery to buttress his claim "that the State withheld Brady material." The PCR court noted "[t]rial counsel raised the issue of Brady violations prior to sentencing." The court stated that when the claim was initially asserted, it "was unsupported by an affidavit, or a certification [as] required by Rule 1:6-6." In fact, "trial counsel [had] detailed her unsuccessful

6

efforts to obtain certifications."  The PCR court noted that the trial court determined there were no <u>Brady</u> violations.

The PCR court stated the previous ruling was "conclusive since the[] allegations are the same ones being raised in the [PCR] motion."  Because the <u>Brady</u> "claim was raised at trial, [and] rejected by the trial court . . ., [it wa]s not cognizable in a PCR motion."

In addition, the court noted "defendant ha[d] failed to specify in any detail the discovery he [wa]s seeking."  The court stated "[a]n open-ended search through the State's files in hope of finding something to challenge the judgment is precisely what a defendant may not do."

As to defendant's petition for PCR, the court executed the April 17, 2023 order denying the petition without an evidentiary hearing.  In a twenty-page written opinion accompanying the order, the PCR court explained that it considered the parties' briefs; the trial, verdict, and sentencing transcripts; the grand jury report; and the parties' oral arguments from March 28, 2023.

As to defendant's claims of prosecutorial misconduct, the PCR court noted the claim of <u>Brady</u> violations was "raised at trial" and "prior to sentencing."  The court stated the claims were "rejected," because they were "unsupported by an

affidavit, or a certification [as] required by Rule 1:6-6." The court noted "trial counsel [had] detailed her unsuccessful efforts to obtain certifications."

The PCR court stated the Brady claims, "could, and should have been raised on direct appeal," and were "therefore, . . . procedurally barred under R[ule] 3:22-4." Despite the procedural bar, the court considered the merits of the Brady claims. The court noted that defendant "did not provide [it] with any additional affidavits or certifications" or "new information regarding the alleged Brady" violations. The court found no "evidence to support the contention that the State suppressed favorable, material evidence that could have affected the outcome of the case." Therefore, the court found there were no Brady violations.

As to defendant's claim that the prosecutor prejudiced his defense by making a television appearance, the PCR court noted the issue was raised in a prior proceeding. Nonetheless, the court noted defendant failed "to show that the former [p]rosecutor's television appearance had any bearing on his case."

The PCR court concluded defendant's arguments regarding the illegal seizure of his house and the State's fabrication of evidence, were "'bald assertions' of alleged misconduct and relie[d] on no factual basis." The court noted it was not provided with "any additional affidavits or certifications

8

regarding this issue." Further, that court noted the "information would not have prejudiced . . . defendant nor changed the outcome."

In conducting its Strickland[4] analysis, the PCR court noted "defendant ha[d] not provided any evidence, for any of his points, that trial counsel was deficient nor fell below competency."

Defendant claimed "that trial counsel erred by not calling Dr. . . . Baden as a witness." The PCR court noted "Dr. Baden was initially retained as an expert witness by the State regarding the time and manner of death of the victim." The court noted "Dr. Baden was listed as a defense witness prior to trial but was ultimately not called to testify at trial."

Defendant contended that Dr. Baden's testimony was "critically important for the jury to hear" because it "contradict[ed] the State's theory that the murder occurred at 8:30 a.m. and demonstrate[d] that James Kauffman committed the murder."

However, the PCR court noted "[d]efendant's defense at trial was not that James Kauffman shot his wife, but that James Kauffman arranged for Joseph Mulholland and Frank Mulholland to commit murder." Therefore, "[t]rial

---

[4] Strickland v. Washington, 466 U.S. 668 (1987).

counsel c[ould ]not be faulted for not using Dr. Baden's report to advance a theory it could not support."

Further, the PCR court noted "the State's theory was that April Kauffman was murdered closer to 5:00 a.m." The court explained that video evidence "captured Joseph Mulholland's vehicle [purportedly transporting Francis Mulholland, April Kauffman's shooter] . . . at 5:16 a.m. on the day of the murder," and other video evidence "captured James Kauffman's vehicle driving by at 5:18 a.m."

In addition, the PCR court noted "the jury did hear the facts [detailed in Dr. Baden's] report" during cross-examination of "the State's medical expert" and "the State's forensic witness." Further, the court noted that "[t]rial counsel used four medical expert reports obtained by the State to argue in summation that the State failed to establish a time of" the victim's death. Thus, "[g]iven the fact that Dr. Baden was originally retained by the State, trial counsel was strategically able to use Dr. Baden's report to cross[-]examine the State's witnesses without calling Dr. Baden," and "trial counsel referenced Dr. Baden and his report in her summations." The PCR court concluded that "[t]rial counsel's strategic decisions should not be scrutinized, and . . . f[ound] no support for . . . ineffective assistance."

A-3384-22

The PCR court considered defendant's contentions that trial counsel was ineffective by refusing "to allow [him] to testify, fail[ing] to review discovery with [him], and . . . inadequately prepar[ing] for trial." However, the court found defendant offered "no evidence in support of these claims and [the claims were] directly negated by the motions filed, briefed, and argued by [trial] counsel as well [as counsel's] objections to the State's motions."

As to defendant not testifying at trial, the PCR court noted "defendant stated on the record that he wished not to testify." The court stated that prior "to this, [trial] counsel indicated that [she] had previously discussed this with . . . defendant and even asked for additional time to discuss it further." The court noted "defendant stated . . . he wanted to defend himself, [but] . . . would listen to the advice of his counsel and elected not to testify."

The PCR court stated there was "evidence in the record that [trial] counsel did have communication with . . . defendant during trial." For example, the court referenced pretrial motions when trial counsel requested defendant be uncuffed so he could take notes and allow defendant and counsel to communicate easier.

Regarding defendant's claim that trial counsel was inadequately prepared, the PCR court noted that there "was a total of four days of pretrial motions and

each motion was competently argued by" trial counsel. Moreover, trial counsel had "filed their own motion to preclude the State from using recordings during trial which was fully briefed and argued before the trial" court.

The PCR court also considered defendant's claim that trial counsel was ineffective for failing to call other witnesses to testify that "he had a sign business and that he [had] no relationship with Francis Mulholland." However, the court noted "the specific witnesses that would have been presented were not mentioned." The court concluded defendant's claim that trial counsel was deficient for failing to "procure unspecified witnesses, [wa]s unpersuasive."

The PCR court considered defendant's argument that trial counsel was ineffective for failing "to object to the prosecutor's remarks about the Pagans motorcycle gang."[5] However, the court noted "during the charging conference, [trial] counsel made sure the court would not be reading any redacted material concerning . . . defendant and his alleged association with the Pagans." Further, the PCR court noted that in our opinion on defendant's direct appeal we

---

[5] "The trial evidence revealed Kauffman used his medical practice to illicitly distribute OxyContin to defendant, who was a retired member of the Cape May chapter of the Pagan Motorcycle Club (Pagans)." Augello, slip op. at 3. We concluded the trial court did not abuse its discretion in admitting evidence regarding the Pagans "to establish the elements of the RICO charge and the underlying conspiracies." Id. at 11.

12

"discerned no prejudice to . . . defendant from the prosecutor's lone reference to the Pagans as an 'outlaw' motorcycle club."[6]

Lastly, the PCR court considered defendant's contention that trial counsel was ineffective because of her failure "to be aware that a co-defendant was an FBI informant and . . . [she] refused to cross-examine witnesses because 'she felt sorry for them.'" However, the court found "no evidence for these claims nor [wa]s there any evidence within the trial record that support[ed] these claims."

Therefore, the PCR court concluded that defendant failed to establish prong one of the Strickland test. Having reached that conclusion, the court concluded "defendant . . . failed to demonstrate . . . any deficiency prejudiced him of a fair trial." Thus, defendant could not establish the second prong of Strickland, prejudice.

On appeal, defendant raises the following points for our consideration:

> POINT I
>
> AS DEFENDANT HAS MET HIS BURDEN TO
> SHOW THAT GOOD CAUSE AND THE INTEREST
> OF JUSTICE WARRANTED GRANTING HIS

---

[6] The trial court admonished the parties to refrain from referring to the Pagans "as an 'outlaw' club or by similar terms." Id. at 19. We noted "[t]he assistant prosecutor's single, fleeting" reference "to the Pagans as an 'outlaw' motorcycle club" "d[id] not warrant reversal." Id. at 51.

DISCOVERY MOTION TO VINDICATE HIS PCR CLAIMS, THE PCR COURT ERRED BY DENYING THE MOTION.

POINT II

AS DEFENDANT HAD MET HIS BURDEN TO ESTABLISH A CASE OF INEFFECTIVE ASSISTANCE OF COUNSEL, THE PCR COURT ERRED WHEN IT DENIED HIS PCR PETITION.

(1) Trial counsel's failure to have Dr. Baden testify as to time of death was not objectively reasonable and denied defendant a complete defense.

(2) Trial counsel's failure to present defendant to testify was prejudicial error.

(3) Trial counsel's failure to adequately prepare for and investigate the case denied defendant effective legal representation.

> (A) [T]rial counsel failed to investigate defendant's past successful business which would have rebutted the State's argument that he financially needed to be involved in drug distribution.

> (B) Trial counsel failed to present evidence that defendant had no prior relationship with Francis Mulholland.

> (C) Trial counsel failed to challenge that the defendant's alleged membership in the Pagans was irrelevant to his motive to engage in drug distribution.

14

(D) Trial counsel failed to adequately prepare for trial.

(4) [T]rial counsel's cumulative errors denied defendant effective representation.

POINT III

AS THERE ARE GENUINE ISSUES OF MATERIAL FACTS IN DISPUTE, THE PCR COURT ERRED WHEN IT DENIED DEFENDANT'S PCR PETITION WITHOUT AN EVIDENTIARY HEARING.

POINT IV

THE STATE ENGAGED IN PROSECUTORIAL MISCONDUCT BY WITHHOLDING BRADY MATERIAL BOTH BEFORE AND DURING THE DEFENDANT'S TRIAL.

We begin our discussion with a review of the principles governing our analysis. PCR "is New Jersey's analogue to the federal writ of habeas corpus." State v. Preciose, 129 N.J. 451, 459 (1992). PCR "provide[s] a built-in 'safeguard that ensures that a defendant [i]s not unjustly convicted.'" State v. Nash, 212 N.J. 518, 540 (2013) (quoting State v. McQuaid, 147 N.J. 464, 482 (1997)).

"[O]ur cases have recognized that, . . . New Jersey courts have 'the inherent power to order discovery when justice requires.'" State v. Marshall, 148 N.J. 89, 269 (1997). However:

[O]nly in the unusual case will a PCR court invoke its inherent [power] to compel discovery. In most cases, a post-conviction petitioner will be fully informed of the documentary source of the errors that he [or she] brings to the PCR court's attention. Moreover, we note that PCR "is not a device for investigating possible claims, but a means for vindicating actual claims." The filing of a petition for PCR is not a license to obtain unlimited information from the State . . . .

[Id. at 270 (citation omitted).]

A PCR court's decision to deny discovery is reviewed under an abuse of discretion standard. Id. at 271. An abuse of discretion "arises when a decision is 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002) (quoting Achacoso-Sanchez v. Immigr. & Naturalization Serv., 779 F.2d 1260, 1265 (7th Cir. 1985)).

Under Rule 3:22-4:

Any ground for relief not raised in the proceedings resulting in the conviction, . . ., or in any appeal taken in any such proceedings is barred from assertion in a proceeding under this rule unless the court on motion or at the hearing finds:

(1) that the ground for relief not previously asserted could not reasonably have been raised in any prior proceeding; or

(2) that enforcement of the bar to preclude claims, including one for ineffective assistance of counsel, would result in fundamental injustice; or

(3) that denial of relief would be contrary to a new rule of constitutional law under either the Constitution of the United States or the State of New Jersey.

A ground could not reasonably have been raised in a prior proceeding only if defendant shows that the factual predicate for that ground could not have been discovered earlier through the exercise of reasonable diligence.

A denial of relief would be contrary to a new rule of constitutional law only if the defendant shows that the claim relies on a new rule of constitutional law, made retroactive to defendant's petition by the United States Supreme Court or the Supreme Court of New Jersey, that was unavailable during the pendency of any prior proceedings.

Moreover, "[a] prior adjudication upon the merits of any ground for relief is conclusive whether made in the proceedings resulting in the conviction or in any post-conviction proceeding brought pursuant to this rule or prior to the adoption thereof, or in any appeal taken from such proceedings." R. 3:22-5.

"In order for a claim of ineffective assistance of counsel to entitle a [defendant] to an evidentiary hearing, 'bald assertions' are not enough—rather, [a] defendant 'must allege facts sufficient to demonstrate counsel's alleged

17

substandard performance.'" State v. Jones, 219 N.J. 298, 311-12 (2014) (quoting State v. Porter, 216 N.J. 343, 355 (2013)) (internal quotation marks omitted).

"[T]rial courts ordinarily should grant evidentiary hearings to resolve ineffective-assistance-of-counsel claims if a defendant has presented a prima facie claim in support of" PCR. Preciose, 129 N.J. at 462. "[C]ourts should view the facts in the light most favorable to a defendant to determine whether a defendant has established a prima facie claim." Id. 462-63. "Where, as here, the PCR court has not conducted an evidentiary hearing, we review its legal and factual determinations de novo." State v. Aburoumi, 464 N.J. Super. 326, 338 (App. Div. 2020).

"A petition for [PCR] is cognizable if based upon . . . [a s]ubstantial denial in the conviction proceedings of defendant's rights under the Constitution of the United States or the Constitution or laws of the State of New Jersey." R. 3:22-2(a). "Those accused in criminal proceedings are guaranteed the right to counsel to assist in their defense." State v. Gideon, 244 N.J. 538, 549 (2021) (citing U.S. Const. amend. VI; N.J. Const. art. I, ¶ 10). "[I]t is not enough '[t]hat a person who happens to be a lawyer is present at trial alongside the accused,' . . . rather, the right to counsel has been interpreted by the United States Supreme Court and [the New Jersey Supreme] Court as 'the right to the effective

assistance of counsel.'" Id. at 550 (second alteration in original) (quoting Strickland, 466 U.S. at 685-86).

To establish a prima facie claim of ineffective assistance of counsel, defendant "must [first] show that counsel's performance was deficient." Strickland, 466 U.S. at 687. "Second, . . . defendant must show that the deficient performance prejudiced" him or her. Ibid. "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." Ibid. "A petitioner must establish the right to [PCR] by a preponderance of the credible evidence." Preciose, 129 N.J. at 459.

Under the first prong of the Strickland test,[7] a defendant must demonstrate that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687. "Judicial scrutiny of counsel's performance must be highly deferential." Id. at 689. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the

---

[7] The Strickland test was adopted for application under the New Jersey Constitution. See State v. Fritz, 105 N.J. 42, 58 (1987).

circumstances, the challenged action 'might be considered sound trial strategy.'" Ibid.  (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)).

Under the second Strickland prong, a defendant must show "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  Id. at 687.  That is, "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694.  Because prejudice is not presumed, Fritz, 105 N.J. at 52, the defendant must demonstrate "how specific errors of counsel undermined the reliability" of the proceeding, U.S. v. Chronic, 466 U.S. 648, 659 n.26 (1984).

Applying these well-established legal standards and having carefully reviewed the record on appeal, we find no misuse of the PCR court's discretion in denying PCR discovery and are convinced defendant failed to establish a prima facie right to an evidentiary hearing or PCR.

Defendant sought discovery in the PCR proceeding after the trial court denied the claim of Brady violations.  Therefore, defendant could have, but did not, raise the denial of the Brady violations on appeal.  Thus, the claim for Brady violations was barred from PCR under Rule 3:22-4 and Rule 3:22-5.

Consequently, any claim for PCR discovery, related to the barred claim, would be superfluous.  In addition, defendant failed to produce any affidavits or

certifications or any new information concerning the alleged <u>Brady</u> violation. Under these circumstances, we conclude the PCR court did not abuse its discretion in denying PCR discovery.

As to defendant's claims for ineffective assistance of counsel, we conclude defendant failed to establish a prima facie claim that trial counsel's representation was deficient. The failure to call Dr. Baden was not deficient, because defendant misstates the State's timeline and video evidence captured Joseph Mulholland and James Kauffman in the area, consistent with the State's theory. In addition, the jury heard Dr. Baden's timeline through trial counsel's cross-examination of multiple State witnesses. The strategic decision to introduce Dr. Baden's analysis in this manner should not be second-guessed.

Moreover, the assertions regarding defendant's choice not to testify; a failure to communicate or review discovery; and inadequate trial preparation are all undermined by a complete review of the record. Further, defendant's suggestion that trial counsel's performance was deficient for failure to summon unspecified witnesses has no merit and the claim that trial counsel failed to make certain objections is not supported in the record.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

21